UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES

v.            405CR059

MARTIN J. BRADLEY, III, et al.

## ORDER

### I. INTRODUCTION

Before the Court in this complex criminal RICO prosecution is a motion (doc. # 1000) by the Court-appointed Monitor to amend the Court's 7/30/07 Order (doc. # 992). That Order directed the unsealed filing of Receiver and Monitor reports concerning millions of dollars worth of ongoing forfeiture asset liquidation in this case. The Receiver herself moves the Court for leave to file her un-redacted reports under seal, doc. # 998, then file a separate, redacted version. Doc. # 999.

### II. BACKGROUND

This criminal RICO prosecution arises from a prescription-drug-based fraud scheme advanced in varying degrees by eight individual and two corporate defendants. Doc. # 1; # 106 at 2. A jury convicted Martin J. Bradley, Jr., Martin J. Bradley, III, Albert Tellechea and Bio-Med Plus, Inc. (Bio-Med). Doc. ## 738-41. The Court ultimately entered Consent Orders directing forfeiture and, to that end, appointing a Receiver and Monitor to marshal the Bradley defendants' forfeited assets, which includes Bio-Med and its inventory. Doc. ## 598, 599, 790. Some of the defendants' assets were tangled up with their wives' property, so this has complicated matters.

Meanwhile, the Receiver had a previous professional relationship with some of the defendants, so the Court appointed the Monitor to oversee her. See doc. # 599 at 2-4; # 1000 at 3.[1] The Receiver has since marshaled various non-cash assets for liquidation, and has filed a variety of motions to assist in the orderly asset liquidations. To that end, she successfully moved to seal some filings, see, e.g., doc. # 905 and has been sending the Court -- *unfiled* -- various monthly (Receiver and Monitor) reports to keep the Court apprised of her progress.

Bradley, Jr.'s wife, Norma Bradley, moved the Court for access to those reports (hence, she wanted them filed in the record, if not receive a copy directly). Doc. # 977. Both the Receiver and the Government opposed, arguing that she had no standing. Doc. ## 979, 982.

Norma, however, advanced her motion not only as a private party but as a member of the general public. Doc. # 977 at 3 (citing *U.S. v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005)). This Court comprehensively explored the law governing sealing and secrecy in *U.S. v. Bradley*, 2007 WL 1703232 (S.D.Ga. 6/11/07) (unpublished). There it overruled defendant Martin Bradley, Jr.'s objection (doc. # 950) to this Court's announced intent to unseal the entire record of this case, and thus his personal medical information. *Id.* at * 5.

The Court reached that result after applying the express command of *Romero v. Drummond*

---

[1] Those who violate S.D.GA.LOC.R 10.1's pagination command needlessly burden this Court. See doc. # 1000 (Monitor's motion/brief). The Court has manually paginated doc. # 1000 so that it can pin-cite to pages within it. Counsel are instructed to train themselves and their staff to use their word processor's pagination feature.

*Co., Inc.*, 480 F.3d 1234, 1245-46 (11th Cir. 2007) and *Ochoa*, 428 F.3d at 1028-29, to presume against secret documents, secret dockets, secret proceedings, and all the real and imagined sins that can be buried within. That's why "[j]udicial records presumptively are subject to public inspection." *See also Cedar Swamp Holdings, Inc. v. Zaman*, 476 F.Supp.2d 303, 304 (S.D.N.Y. 2007).

The obvious rationale: this is a court of *record* precisely to enable public and appellate scrutiny and thus uphold confidence in the justice system itself. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2nd Cir. 2006). Filing anything aimed at influencing judicial rulings easily fits into what ordinarily must be disclosed *of record*. *Prescient Acquisition Group, Inc. v. MJ Pub. Trust*, 487 F.Supp.2d 374, 375 (S.D.N.Y. 2007) (court "raised *sua sponte* the propriety of the sealed filing of submissions, nearly two feet in height, on a pending summary judgment motion").[2]

In granting the Receiver's sealing motions, the Court had been influenced by the commercial sensitivity and transactional complexities reflected in her monthly reports, *see, e.g.*, doc. # 900, so it could hardly be said that they are superfluous to this case and thus unworthy of inclusion in the record.[3]

In that regard, the Receiver's and Monitor's monthly reports, the Court concluded, could not be legally distinguished from the monthly reports that warranted docket-record inclusion in *U.S. v. Amodeo*, 44 F.3d 141, 145-46 (each report filed with district court by court officer, who was appointed as part of consent decree and whose duties were to investigate corruption in labor union and oversee actions of trustee appointed to administer affairs of union, was "judicial document" subject to common-law presumption of public access, even though court officer was not required to file reports, where court officer deemed it prudent to file reports, district court stated that it was helpful to receive the reports, and consent decree made reports and exhibits filed relevant to performance of judicial function), *later appeal*, 71 F.3d 1044 (2nd Cir. 1995) (fine-tuning how a court should apply the presumption of access). *See also Zaman*, 476 F.Supp.2d at 304 (defendants' papers in opposition to plaintiffs' preliminary injunction motion could not be deleted from public record or filed under seal, but were subject to public inspection; court had relied upon the papers in ruling on the motion, the strong presumption in favor of keeping them on the public record was not overcome, the papers were part of public record for nine days before plaintiffs even made motion to protect them, and they did not seek expedited treatment of the motion).

For that matter, the Court continued, "[w]hat's sauce for the goose is sauce for the gander," *In Re Six*, 80 F.3d 452, 457 (11th Cir. 1996) -- the Court had unsealed documents reflecting Martin Bradley, Jr.'s personal health information -- so the Court granted Norma Bradley's motion (doc. # 977), to this extent:

> The Receiver is directed to file her and the Monitor's monthly reports in one document but in chronological order, from the oldest to the latest, then timely file all monthly reports thereafter. Leave is granted to the Receiver and Monitor,

---

[2] S.D.Ga.Loc.R. 79.7 prohibits parties from filing any documents under seal *unless* they first obtain the Court's permission.

[3] In fact, the Court had just consulted the 7/7/07 Monitor's Report at 16 and 20, regarding a pending motion (doc. # 946) to Stay the Destruction of Non-Pedigree Inventory. It also noted the Receiver's conflict illuminated on page 21 therein.

2

however, to file a motion to redact any data within those reports that meets this Court's previously illuminated sealing criteria. Should such motion be received within ten days of the date this Order is served, then this Order's direction (to file the monthly reports) is automatically stayed pending disposition of that motion.

Doc. # 992 at 2. The Receiver has filed a motion to redact, doc. # 999; *see also* # 998 (motion to file unredacted reports under seal), thus automatically staying the Court's Order docketed at # 992. The Monitor, meanwhile, has filed a motion to amend, doc. # 1000, seeking to be relieved from filing *any* reports. Norma and her husband, Bradley, Jr., oppose these motions. Doc. ## 1003, 1004, 1007, 1008.

### III. ANALYSIS

#### A. Monitor's Motion to Amend

Moving to amend Order # 992, the Monitor wants to be excluded from the public-filing Order. It insists that it is "unique." Doc. # 1000 at 2. It has, the Monitor reminds,

> carried out its role in overseeing the conduct and activities of the Receiver for the purpose of identifying any action or omission (i) that may have been influenced by an apparent conflict of interest, (ii) caused the government's property interests in assets to be sold in satisfaction of the Court's Preliminary Order of Forfeiture to be unduly diminished or dissipated, or (iii) was in violation of any federal law or policy of the U.S. Department of Justice related to the forfeiture and disposition of property subject to forfeiture. The Monitor has in compliance with the direction of the Order prepared and submitted monthly reports relating to these three areas of responsibility.

*Id.* Since the Monitor does make asset-marshaling/liquidating decisions, but only *monitors* the Receiver, *id.*, the "interests in transparency that the Court desires to ensure by its order are not implicated by [the Monitor's] role and [its] reports in the same way they are by the Receiver's reports." *Id.* at 2. Forcing the Monitor to file its reports "may unwittingly result in a significant diminution of [its] ability to accurately and candidly refer any comment on concerns of conflict to the government." *Id.* at 3.

Thus, the Monitor concludes, such exposure "will likely alter the working relationship with the Receiver," and therefore "may make it more difficult to obtain information on a timely basis." *Id.* And that may,

> in turn, make it more difficult to assess the conduct of the Receiver. It will also likely result in the Monitor's role being misconstrued by the defendants and make the Monitor an arm of the defendants rather than a protector of the government's interests.

*Id.*[4]

None of these arguments are convincing. The whole point of using a Monitor is to oversee a Receiver who used to have a professional relationship with some of the defendants (*see* doc. # 1000 at 2) and who is marshaling and liquidating tens of *millions* of

---

[4] This is not a baseless contention. In his opposition brief defendant Martin J. Bradley, Jr. contends that the Monitor must uphold a fiduciary duty to both the Government and the forfeiture defendants in this case. Doc. # 1007 at 2; *see also* doc. # 872 at 2.

3

dollars in assets which, pursuant to forfeiture, now belong to the U.S. Government and thus the public in this presumptively public-access forum. If the Receiver runs off the rails, the Monitor is *supposed* to speak up.

That means speak up publicly, as sunshine still remains the best disinfectant against incompetence, financial mismanagement, or worse. And there is nothing "unique" about employing an oversight agent. Much of the Government itself has *institutionalized* this feature (*e.g.*, the Justice Department's Office of the Inspector General,[5] Congress's Government Accounting Office,[6] etc.), with public disclosure (a steady stream of OIG and GAO reports) as an indispensable component.

Nor does the Monitor point to any Consent Order, agreement, or assurance by this Court that its reports, which obviously are intended to influence Court rulings (the Court has relied upon them in extending the Receiver's tenure; *see also supra* n. 3), would not become part of the record before this Court. The Court may have been remiss in failing to direct the filing of these reports in the first place, but that does not justify "dark-holing" them now.

Finally, the Monitor's relationship with the Receiver is supposed to be scrutinous, not cozy. Put simply, the Monitor should not feel bashful about its duty to question, criticize or otherwise *monitor* the Receiver. So, the Court rejects the Monitor's subtle suggestion that public-scrutiny "may unwittingly result in a significant diminution of [its] ability to accurately and candidly refer any comment on concerns of conflict to the government." Doc. # 1000 at 3.[7]

The same may be said for the Monitor's concern about its role being "misconstrued by the defendants" to make it "an arm of the defendants." *Id.* The defendants can construe or misconstrue anything they want; the Monitor simply does not work for them. And the Court is well able to sort out any baseless legal claims raised before it.[8]

Those who seek to seal any court record, or avoid the filing of anything sent to a judge, must provide good "grounds for why they want something kept from the public, as there is a presumption *against* secrecy." *Snethen v. Board of Public Educ. for the City of Savannah and the County of Chatham*, 2007 WL 2345247 at * 1 (S.D.Ga. 8/15/07) (unpublished) (emphasis added) (*citing U.S. v. Bradley*, ___ F.Supp.2d ___, 2007 WL 1464058 at * 10 (S.D.Ga. 5/17/07), *unsealing objections overruled, U.S. v. Bradley*, 2007 WL 1703232 (S.D.Ga. 6/11/07) (unpublished); and *U.S. v. Bradley*, 405CR059 doc. # 992 (S.D.Ga. 7/30/07) (unpublished)).

Here the Monitor has failed to overcome that presumption. The Court therefore denies its motion (doc. # 1000) to amend the Court's 7/30/07 Order (doc. # 992). The Monitor therefore shall file its reports, if not already part of the Receiver's joint-filing bundle, as directed by the Court's 7/30/07 Order (doc. # 992) at 2.

---

[5] http://www.usdoj.gov/oig/ (site visited 9/25/07).

[6] http://www.gao.gov/ (site visited 9/25/07).

[7] If, by this language, the Monitor means that it feels inclined to pull punches now that its reports will be filed, then the Court will seek a new Monitor.

[8] The Receiver has special duties as set forth in a previous Order, doc. # 872 at 2. The Monitor's duty is spelled out in the Court's appointment Order, *see* doc. # 599; this Court will control the contours of that duty.

### B. Receiver's Motion to Redact

The Receiver, who says she has never been provided with copies of the Monitor's reports, doc. # 999 at 1 n. 1, seeks to file her reports in unredacted form under seal, doc. # 998, along with unsealed, but redacted reports, doc. # 999, basically blocking from public view:

> (a) sensitive business information on current and pending transactions the disclosure of which could adversely affect those transactions to the detriment of the Receivership estate, and (b) attorney work product regarding strategy and litigation tactics in connection with pending or contemplated actions against third parties or in defense of third party claims, ongoing investigations or pending negotiations, the disclosure of which would also be injurious to the Receivership estate.

Doc. # 999 at 2.

Norma, who holds property interests tied up in the forfeiture liquidation process, *Bradley*, 2007 WL 1464058 at * 1 n. 1, complains that she "cannot ascertain the Receiver's reasons for concealing so much information." Doc. # 1018 at 1. As an example,

> Mrs. Bradley cannot figure out how Exhibit E (Summary of Estimated Liquidation Proceeds as of March 9, 2007) and Exhibit F (Estimated Distribution of Liquidation Proceeds as of January 15, 2007) in the 30-day report for April 2006 qualify as either (1) sensitive business information on current and pending transactions or (2) attorney work product regarding strategy and litigation tactics.

*Id.* Nor, in that regard, does the Receiver explain how "attorney work-product regarding strategy and litigation tactics could *not* have been intended to affect [the Court's] decisions." *Id.* at 2 (quotes and cite omitted; emphasis added); *see also* doc. # 1003 (arguing that the Government is a "third party," the disclosure of work-product material to a third party waives the privilege, so therefore data on that score must not be kept sealed here). Thus, Norma contends, the Court should deny the Receiver's motion and direct her to file her reports, unredacted, every 30 days. *Id.*

The Court grants the Receiver's motion and overrules Norma's "attorney work product" objections. Plenty of legal decisions must be made in optimizing the liquidation yield here, and inevitably the Bradley wives' interests will be adverse to the Government's (hence, the Receiver's and Monitor's) interest in maximizing asset identification/collection up to the limits of the Consent Forfeiture Order set forth at doc. # 598 and clarified by later Orders. *See, e.g., Bradley*, 2007 WL 1464058 at ** 3-8.

For that matter, the Receiver *may* be said to owe a fiduciary duty to both the Bradleys and any Bradley creditors, *see* doc. # 872 at 2 (quoting a treatise concluding that); # 1014 at 4, but her primary duty obviously is to the Government, which now holds title, which attached on the date of their conviction, over the defendants' forfeitable assets. *Bradley*, 2007 WL 1464058 at * 4. And no one can dispute that the Government's interests are adverse to the Bradleys'. The Court therefore accepts the Receiver's representation that redaction is necessary to protect attorney work product and advice.[9]

---

[9] She says that the text in the Redaction Proposal was written to conceal information

5

In contrast, the Receiver does not respond to Norma's contention that too much non-attorney related, "transaction information" would be redacted here. The Receiver's response brief focuses almost exclusively on Norma's work-product argument, doc. # 1014 at 4-7, and, at the end, adverts only to generalized "privacy interests" without explicitly tying that term to the transaction information that she now seeks to redact. *Id.* at 7. The Court therefore considers Norma's (and husband's) point conceded.

The Receiver therefore is directed to file her reports with only attorney work-product and advice redacted. After all forfeiture liquidation is concluded, she shall take measures to "un-redact" all that has been redacted (notify the Clerk to unseal the un-redacted reports), as the sole purpose of the present sealing is to facilitate an orderly and optimal liquidation, and not permanently conceal from the public the goings on here.

Leave is granted, however, for the Receiver to redact all "live" (*i.e.*, imminent-collection and sale) transaction information *if* she in good faith represents that revealing same will jeopardize or otherwise impede optimal liquidation (*e.g.*, she is contemplating the sale of an asset for which a Bradley wife might want to bid, but redaction is necessary to ensure that the wife bid on an equal footing with all other bidders). The Court will presume that "live" means *current and future*, not past, transactions. Even at that, the Court will consider objections to such redaction on a transaction-by-transaction basis, though it will sanction any bad-faith consumption of the Court resources in that regard.

## IV. **CONCLUSION**

Accordingly, the Monitor's motion to amend (doc. # 1000) is ***DENIED***. The Receiver's "redaction" and "sealing" motions (doc. # 998, 999) are ***GRANTED*** in part and ***DENIED*** in part.

This 26 day of September, 2007.

*[signature]*

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

regarding the Receiver's attorneys' opinions and theories regarding adverse litigation, negotiation, and collection efforts. The opinions and strategies omitted from the Redaction Proposal are a direct product of the attorneys' preparations in these respects. While the receivership is pending, it is essential to keep their opinions confidential from adverse parties so they may continue to effectively represent and advise the Receiver in performing her obligations.

Doc. # 1014 at 4-5.