UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 OCT 16  PM 3:25

CLERK_____
SO. DIST. OF GA.

UNITED STATES

v.         405CR059

MARTIN J. Bradley, III, et al.

## ORDER

### I. BACKGROUND

This complex criminal RICO prosecution arises from a prescription-drug-based fraud scheme advanced in varying degrees by eight individual and two corporate defendants. Doc. # 1; # 106 at 2. A jury convicted Martin J. Bradley, Jr., Martin J. Bradley, III, Albert Tellechea and Bio-Med Plus, Inc. (Bio-Med). Doc. ## 738-41. The Government then sought criminal forfeiture but the parties -- including the two Bradley wives -- settled via Court-entered Consent Orders directing $39.5 million in forfeiture and, to that end, appointing a Receiver and Monitor to marshal the defendants' forfeited assets, including Bio-Med and its inventory. Doc. # 598 ("Consent Preliminary Order of Forfeiture"); # 599 ("Order Appointing Receiver and Monitor").

The settlement Orders recognize certain "exempt" (from liquidation) assets. The Preliminary Order directed entry of a $39.5 million forfeiture judgment,[1] to be satisfied within one year, using a liquidation schedule that the Receiver "shall work with Defendants and other owners to establish...." Doc. # 598 at 3. Once the $39.5 million is paid, "the [G]overnment will file a satisfaction of judgment and liquidation will cease as to th[e] Defendants." Id.

However, the Court later expanded the Receiver's role to liquidate defendant-owned assets to pay sentence-based fines and assessments ("sentencing obligations").[2] Doc.

---

[1] This judgment is a joint and several obligation of Bio-Med and both Bradley defendants. Doc. # 598 at 2 ("[t]hese judgments are individual judgments and will not be joint and several, *except* as to Martin J. Bradley, Jr., Martin J. Bradley, III and Bio-Med Plus, Inc." (emphasis added)).

[2] Following the jury's conviction, the Court imposed fines and assessments against the Bradleys, who are Bio-Med's principal owners. It also fined and assessed Bio-Med and Tellechea. *See* doc. # 740 at 9 (against Bradley, III: a $5 million fine and a $24,700 assessment); # 739 at 6, 8 (against Bradley, Jr: a $1.5 million fine and a $400 assessment); # 741 at 5-7 (against BioMed: a $26.5 million fine and a $21,200 assessment); # 738 at 5 (Tellechea: $100,000 fine, $100 assessment).

The Court also ordered restitution totaling $27,804,995.89. *See U.S. v. Bradley*, ___ F.Supp.2d ___, 2007 WL 1464058 at * 3 (S.D.Ga. 5/17/07) (unpublished). But under the Preliminary Forfeiture Order,

> "any amount tendered and forfeited shall be credited to the defendants as restitution." Doc. # 598 at 3. Thus, the entire restitution amount for all defendants will be satisfied by $39,500,000 in forfeiture payments. If the Receiver realizes more than $39,500,000 from liquidating Bio-Med, then the next layer of proceeds pays Bio-Med's $21,200 assessment and $26.5 million fine; any proceeds beyond that would then go to Bio-Med's owners (two of whom, the Bradley defendants here, also owe substantial fines).

*Id.* (footnote omitted).

# 789, 790. The Court has since repeatedly heard from the wives, who seek to protect their interests from liquidation. *See, e.g.,* doc. ## 880, 881, 886, 984, 1034, 1036.

To preserve flexibility in asset-liquidation, Bradley, Jr.'s wife, Norma Bradley, agreed (in the settlement Order # 598 at 3), and in fact did pay toward forfeiture, $2 million -- which is now in the Court's registry. Doc. ## 880, 885. The defendants also committed to pay an additional $1 million toward forfeiture, within 10 days of Order # 598's entry. Bradley, III's wife, Maria Bradley, has since paid that. Doc. # 981 at 2 ¶ 5; *id.* Tab 1 at 3; *but see* doc. # 1033 at 6 (stating that Maria in fact paid $1,084,679).

Finally, the parties agreed that if the defendants failed to disclose any forfeitable property to the Government, the Government could pursue same without restriction, and in addition to the $39,500,000 forfeiture:

> To the extent that assets are discovered or identified which have not been identified to the government in the course [of] negotiations related to this order, the [G]overnment is free to pursue at its discretion those newly discovered assets in addition to the $39,500,000 judgment entered in the Preliminary Order of Forfeiture.

Doc. # 599 at 13.

Those Orders left some obvious questions unanswered. In *Bradley*, the Court asked, "Which parts of the $70 million total forfeiture/sentencing obligation should be paid first, and by whom?" *Bradley,* 2007 WL 1464058 at * 3. Since the settlement orders never spoke to this, the Court did while sifting through liquidation, etc., issues raised by both the Bradley defendants and their wives. The Court thus first recapitulated its original "marching orders" to the Receiver:

> (1) marshal and liquidate all non-exempt Bradley/Bio-Med assets first, then pursue exempt assets (thus necessitating innocent-spouse asset sorting) to pay the Government $39,500,000 in forfeiture. (This satisfies the Government's forfeiture claim as well as the defendants' restitution liability, assuming the restitution principal plus interest is less than $39.5 million).
>
> (2) assuming any assets remain thereafter, *see* doc. # 902 at 2 n. 2, the Receiver shall sell each Bradley defendant's assets to pay his personal fine/assessment.

*Bradley,* 2007 WL 1464058 at * 3.

The Court then clarified the sequence in which the defendants' forfeiture and fine obligations shall be paid: the two Bradleys and Bio-Med each must pay equal shares of the $39.5 million forfeiture judgment, thus preventing the Bradleys from having Bio-Med pay a disproportionate forfeiture share -- to their benefit. *Id.,* 2007 WL 1464058 at ** 3-5; *see also* doc. # 938, Bradley, Jr. has appealed this as an illegal "sentence modification"; # 1035 (Eleventh Circuit Order noting that "The jurisdictional issues are CARRIED WITH THE CASE"). The Court next noted its prior direction to the Receiver to "work with the defendants and other [Bio-Med] owners in order to establish a liquidation schedule which the Receiver and Monitor shall share with the Court, Counsel for the Defendants and government." Doc. # 598 at 3. The Court

therefore [further] direct[ed] the Receiver

2

to craft the liquidation schedule such that (1) Martin J. Bradley, III's non-exempt individual assets satisfy one-third of the $39.5 million forfeiture judgment, (2) Martin J. Bradley, Jr.'s nonexempt individual assets satisfy one-third of the $39.5 million forfeiture judgment, and (3) the proceeds from Bio-Med's sale satisfy one-third of the $39.5 million forfeiture judgment.

*Bradley*, 2007 WL 1464058 at * 5. The Court then expressly noted that "Bio-Med proceeds may be used to satisfy more than one-third of the forfeiture if Bradley, III or Bradle, Jr. cannot cover their assigned one-third by the sale of non-exempt assets." *Id.* Thus, the Court ruled that each "forfeiture" defendant must, if capable, pay $13.67 million in forfeiture from their non-exempt assets, *then* pay their respective fines and assessments from any remaining non-exempt, then exempt, assets. But at the same time, each would be jointly and severally liable to pay the entire forfeiture nut.

Having clarified these issues, the Court then issued new marching orders to the Receiver:

> (1) she must marshal and liquidate all non-exempt Bradley/Bio-Med assets first, and apply each of the three defendants' assets to pay, for each defendant, one-third of the $39.5 million forfeiture judgment;
>
> (2) if all three defendants' non-exempt assets are exhausted, she shall then proceed to liquidate the exempt assets (with the Court's permission) until the entire forfeiture judgment is paid; and
>
> (3) assuming any assets remain thereafter, see doc. # 902 at 2 n. 2, she will then sell each Bradley defendant's assets to pay his personal fine/assessment.

*Bradley*, 2007 WL 1464058 at * 6.

Finally, the Court noted some additional considerations that the Receiver must recognize regarding step 3:

> First, by this stage (*i.e.*, the forfeiture judgment is paid off and excess funds exist), the Receiver no longer enjoys the plenary authority flowing from the Consent Orders (doc. ## 598, 599), so any asset sales must first be Court-approved.
>
> Second, each defendant decides which among his marshaled assets will be sold to satisfy his personal fine and assessment.
>
> Third, assets claimed as "exempt" in the Consent Orders now retain no special status, and can be liquidated to satisfy the fine/assessment unless other assets remain. Note, however, that until the Receiver liquidates $39.5 million in assets, the Consent Orders apply, and the "exempt" assets are thus protected against involuntary liquidation.

*Id.*

Meanwhile, the Court agreed that the Receiver should be given time to present to the Court an orderly liquidation plan, with payments structured in accordance with the Court's latest directions. *Id.* at * 8. The Court thus "defer[red] any decision concerning the application of proceeds the Receiver collects (to satisfy the "joint and several" liabilities discussed above) until such time as a comprehensive liquidation plan can be presented to this Court." *Id.* at * 10.

3

The Receiver then expressed her belief that "all of the corporations with assets in which Bradley, Jr. and Bradley, III own stocks have been identified." Doc. # 970 at 3. Before the expiration of her appointment term, she therefore intended to

> apply the proceeds of the liquidation of Bio-Med's, Bradley, Jr.'s, and Bradley, III's assets so that each satisfies their one-third of the Forfeiture Judgment. In the event that the proceeds of Bradley, Jr.'s and or Bradley, III's assets do not satisfy one-third of the Forfeiture Judgment, [the Receiver acknowledged], the Liquidation Order directs the Receiver to use Bio-Med's proceeds.

*Id.* at 4.

To even get to that point, however, third party creditors must be paid, so the Receiver proffered a claims procedure and follow-up accounting process consistent with due process requirements and the directions of this Court. *Id.* at 4-10. In other words, she moved

> for the entry of an order authorizing and approving 1) a claims procedure for companies affiliated with Bradley, Jr. and Bradley, III., other than Bio-Med, 2) the form and manner of a proof of claim form, and 3) publication of notice of the claims process.

Doc. # 970.

The Court approved the claims procedure, forms, etc., as she proposed at doc. # 974 at 5. Doc. # 991 at 3. In addition, the Court *sua sponte* extended the Receivership by an additional two months, to terminate on 10/31/07. *Id.*

In response to that, the Receiver successfully moved the Court to file a scheduled objection date for her proposed liquidation plan. Doc. ## 1013, 1016; *see also* doc. # 1001 ("Receiver's Certificate of Service for Claims Procedure for Companies Other Than Bio-Med); # 1017 ("Notice of Filing Proof of Publication of Claims Procedure for Companies Other than Bio-med Plus, Inc."); *see also* doc. # 1027 ("Motion For Order Approving Recommended Disposition Of Claims and Authorizing Payment of Allowed Claims").

The Receiver also prepared, in response to the Court's latest "marching orders," "Liquidation Plan Alternatives for the sale of the assets of Bio-Med, Martin J. Bradley, III and Martin J. Bradley, Jr.," doc. # 980 at 1, then successfully moved the Court for leave to file it under seal. Doc. # 989; *see also* doc. # 990 (sealed "Liquidation Plan Alternatives").

In conjunction with doc. # 980, the Receiver moved for an "Order Approving Proposed Allocation of Norma and Maria Bradleys' Contributions For Payment Of The Forfeiture Judgment." Doc. # 981. The Receiver's bottom line: allocate (1) Norma's $2 million to help pay down her husband's $13.67 million forfeiture obligation; and (2) Maria's $1 million to help pay down her husband's $13.67 million forfeiture obligation. Doc. # 881 at 5.

Norma Bradley objects to the liquidation plan, and requests a hearing. Doc. # 993; *see also* doc. # 1021 (additional objections); # 1031 (objections to motion # 1027). Bradley, Jr., meanwhile also has filed objections which Norma adopts. Doc. ## 1022, 1030. Bradley, III and his wife, Maria, also object. Doc. # 1025.

The Government, in general agreement with

4

the Receiver, moves the Court to extend the receivership to 12/31/07, and also proffers its own alternative liquidation schedule. Doc. # 1023. Norma objects to that, doc. # 1034, and Bradley, Jr. joins her. Doc. # 1037.

Other motions include the Receiver's motion for "Approval of (I) Terms of Sale for Real Property, (II) Appointment of Appraisers, and (III) Notices of Sale of Real Property" known as "4 Mall Court, Savannah, Georgia." Doc. # 1032; *see also* doc. # 1033 at 9. Norma, unsurprisingly, opposes that. Doc. # 1036.

Meanwhile, no one has formally moved for a stay pursuant to any of the "jurisdictional issues" noted but not detailed by the Eleventh Circuit. *See* doc. # 1035 at 1; *see also Bradley*, 2007 WL 1464058 at * 9 (jurisdictional analysis in light of pending appeal). And as of 9/14/07, the "Receiver has realized and deposited ... a total of $44.2 million into the Receiver's Accounts. Doc. # 1033 at 6.[3] She distributed $40.2 million to the U.S. Marshall as of that date. *Id.*

## II. ANALYSIS

### A. Receiver's Liquidation Plan

As the Receiver points out, no statute or court order directs her on how to apply the defendants' wives' financial contribution to the pool of liquidation funds. Doc. # 981 at 4 ¶ 12. The Receiver opines that the aforementioned, $3+ million in the wives' contributions should be used to pay down their husbands' forfeiture obligations. *Id.* ¶ 13.

Norma Bradley's objections to the Receiver's proposals are specific; many are posed in the form of questions based on matters cited in the Liquidation Plan Alternatives, doc. # 990, and through her questions she seeks to demonstrate that the Receiver did not adequately resolve asset ownership, so the Liquidation Plan's premises are flawed (*i.e.*, the Plan assumes that a Bradley defendant owns a particular asset when in fact he does not, or does not own the percentage that the Receiver assumes). For example:

> What evidence did the Receiver rely on to conclude that Mrs. Bradley's 72.2 acres of land in Bulloch County should be credited to Defendant Martin J.Bradley, III? (*See* Doc. 980, Ex. at 12.)

Doc. # 993 at 3 (footnote omitted). Bradley, III, says Norma, has "never asserted a claim to such property," and thus, she implies, it should have never been swept into the liquidation pool. *Id.* at 3 n. 6. Other ownership assumptions are similarly challenged. *Id.* at 3. The Receiver herself is so uncertain, Norma contends, that the Receiver even sought to depose Norma about it. *Id.* at 2 n. 5. And no court order, Norma concludes, authorizes the Receiver to unilaterally resolve ownership disputes. *Id.* at 4.

Norma also challenges the Government's assertion, as adopted by the Receiver, that a home known as "22 Wrights Point" was not disclosed to the Government during pre-Consent Order negotiations.[4] Defense counsel Alex

---

[3] The Court's "ECF" docketing software numbers this page as "6," while the printed document (the Receiver's 9/17/07, "SEVENTEENTH 30 DAY REPORT") references this page as page "3." With this and all other documents cited herein and hereafter, the Court will use the docketing-software pagination -- that is what the public likely sees first when accessing the docket.

[4] In a later-filed brief the Government insists that this property was undisclosed and thus forfeitable above and beyond the $39.5 million, agreed-forfeiture amount. Doc.

Zipperer, as corroborated by a tendered email print-out, disclosed that property to Government counsel James L. Coursey, Jr., the night before this Court entered the Preliminary Forfeiture Order. *Id.* at 4 n. 9 & Tab. 5 (email print-out). And besides, Norma further argues, the "discretion" clause in doc. # 599, authorizes the Government to *pursue* undisclosed property; it does not grant it automatic forfeiture. *Id.* at 5.[5]

The Receiver's liquidation alternative scenarios also are premised on flawed legal foundations, says Norma:

> First, the Receiver's various "scenarios" are premised on liquidation of Norma Bradley's assets to pay her husband's fines and assessments, even though a non-defendant's assets are not subject to liquidation to pay a defendant's monetary punishment. *See United States v. Gilbert*, 244 F.3d 888, 919-20 (11th Cir. 2001); *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000). Second, while paying lip service to the contractual obligation under the Consent Orders to "work with Defendants and other owners in order to establish a liquidation schedule," (doc. 598 at 3), the Receiver turns that requirement on its head by suggesting that "the Receiver can work with the Bradley Wives and Defendants' counsel to establish a prioritized liquidation schedule to be submitted to the Court" after receiving "direction by the Court after his review of the Plan and Liquidation Alternatives."

Doc. # 993 at 5 (footnotes omitted).

Norma also points out that the Receiver is factoring in interest on the fines, and this is unwarranted:

> [T]he Receiver assumes that interest on fines should be imposed even though the Defendants have been prevented from paying their fines by virtue of the Order of October 4, 2006. Compounding that error, the Receiver contemplates liquidating assets of non-defendants Norma and Maria Bradley to pay the interest on their husband's fines. Such action is even worse than liquidating a non-defendant's assets to pay the underlying monetary punishment.

*Id.* at 6 (footnote omitted).

Norma therefore opposes the Receiver's quest to apply her $2 million, which is still in the Court's Registry, to pay off her husband's portion of the Forfeiture Judgment against him. *Id.* at 6. She seeks limited, written discovery aimed at curing any errors in the Receiver's liquidation plan. *Id.* And she repeatedly reminds the Court that things like the Receiver's expanded authority (to collect fines) is on appeal. *Id.* at 5 n. 11; *see also id.* at 3 n. 8 (the "22 Wrights Pointe" property issue is on

---

# 1023 at 4 n. 1. The Government also identifies a 72.21 acre Georgia parcel as "undisclosed" and thus pursues that, too. *Id.* Significantly, however, no one rebuts Norma's "Zipperer" evidence.

[5] Again, that provision states that

> [t]o the extent that assets are discovered or identified which have not been identified to the government in the course [of] negotiations related to this order, the government is free to *pursue* at its discretion those newly discovered assets in addition to the $39,500,000 judgment entered in the Preliminary Order of Forfeiture.

Doc. # 599 at 13 (emphasis added).

6

appeal); doc. # 1021 at 4 n. 8 (also on appeal is this Court's extension of the Receiver's tenure beyond 4/3/07, without which interest on Court-ordered fines would not have accrued).

Only as a final fall-back position, Norma would like her $2 million credited against her husband's (Bradley, Jr.'s) obligations. Doc. # 993 at 6 n. 15.

Joining wife Norma in objecting, doc. # 994 at 1-2, Bradley, Jr. adds that a hearing is necessary to resolve the mere *assumptions* that the Receiver has made about who owns what. *Id*. at 2. In a follow-up brief, Norma informs the Court that she sought to resolve her objections informally via tele- and personal conferences with the Receiver, in addition to her deposition. Doc. # 1021 at 1. She says that the Receiver may file an amended proposed liquidation plan, so she must necessarily hedge what she says now. *Id*. But Norma still insists that the Receiver travels on factual inaccuracies regarding property ownership. *Id*. at 2 (enumerating examples of assets *not* owned by her husband). She has attached to her brief various deed and share certificate documents proving her ownership/non-ownership property assertions. Doc. # 1021, Tabs 3-7.[6]

This Court, Norma reminds, emphasized just months ago that "the [Preliminary Consent Order] cannot be read as granting the Government (and thus the Receiver) *carte blanche* to steamroll the wives' intermixed interests here...." Doc. # 991 at 4.

In his own follow-up brief, Bradley, Jr. reminds the Court that he has appealed this Court's *Bradley* Order (he contends that it is an illegal sentence modification), so he objects to any liquidation plan based on that Order's direction to the Receiver to collect assets and pay the forfeiture obligation based on the aforementioned, 1/3 per-defendant split. Doc. # 1022 at 1-2. He "submits that the Court should delay implementation of the plan pending appellate review," *id*. at 2, yet he does *not* formally move the Court for a stay. Meanwhile, he, too, complains of Receiver errors in identifying who owns what and in what percentage. *Id*. at 2-3. He thus seeks additional time (until 10/1/07)[7] to try and work things out with the Receiver. *Id*. at 4.

Filed on the same day as Bradley, Jr.'s follow-up brief, the Government weighs in as follows:

• Of the disclosed, non-exempt assets identified in Exhibit 1 of the Receiver's Plan, approximately $48 million in assets have been liquidated. In addition, Norma Bradley has deposited her disclosed, non-exempt $2 million asset into the Court's registry.

• The Receiver estimates in Exhibit 1 that the liquidation of additional disclosed, non-exempt assets would total between $15,333,003 and $25,980,801.

• The Receiver estimates the liquidation value of disclosed non-exempt assets (with accrued interest) to be between $65,393,716 and $76,041,517.

• Under the Court's *Bradley* directive to the Receiver, Bio-Med would be unable to pay most of its $26.5 million sentencing

---

[6] Filed 9/21/07, it is conspicuous that no one has rebutted this showing.

[7] That date has come and gone, and the Court discerns no follow-up by Bradley, Jr. on that score.

7

(fine, etc.) obligation. Moreover, Bradley, Jr. would be unable to pay any non-forfeiture (hence, sentencing) obligations from exempt assets. In addition, the three alternative plans identified by the Receiver result in one or all defendants unable to pay their sentencing obligations. Accordingly, the Government proposes its own alternative liquidation schedule.

- Since, the Government reasons, the $39.5 million forfeiture judgment is a joint and several obligation of Bio-Med and both Bradley defendants, the Government may choose which of the Defendants' individual or collective non-exempt assets to satisfy the $39.5 million forfeiture judgment. Accordingly, the Government chooses (and requests the Court to order) that disclosed, non-exempt assets be applied in a specified sequence until the forfeiture money judgment is satisfied (the Government then enumerates various assets, including the wives' $3 million in cash to be applied in a specific sequence set forth in its brief).

Doc. # 1023 at 4-7.

The Government then totals up the individual or joint and several obligations (*i.e.*, fines, forfeitures, restitution and other obligations) "at approximately $72.5 million (assuming credit toward restitution through forfeiture and *excluding* interest)." *Id.* at 7 (emphasis added). And the Receiver, the Government points out, estimates that the liquidation value of disclosed, non-exempt properties of the Defendants to be between $65,393,716 and $76,041,517." *Id.*

Thus, the Government believes that its proposed liquidation plan and schedule would ensure payment of the $39.5 million joint and several forfeiture judgment from disclosed nonexempt assets and the collection of the Defendants' individual obligations -- possibly without seeking the liquidation of the exempt assets identified in the Court's 4/3/06 and 10/4/06 Receiver-appointment Orders. *Id.*

With the possibility of some $3.5 million left in the Bradley defendants' hands (the Government points out that its calculations *exclude* the "undisclosed" assets, doc. # 1023 at 7), "the Government welcomes discussions with Defendants and other interested parties toward that end." *Id.* at 7-8. Given the pace of things, however, it moves the Court to extend the Receivership's tenure (now set to expire 10/31/07) to 12/31/07. *Id.* at 8.

Also filed on that same day, Bradley, III and his wife Maria object to the Receiver's proposed liquidation plan alternatives. They acknowledge that the Preliminary Consent Order failed to "specify what percentage of the $39.5 million each defendant must pay." Doc. # 1025 at 2. And, they further acknowledge, this Court did later fill in that gap by directing the Bradleys and Bio-Med to each pay 33.3% (1/3) each of the forfeiture obligation. But the Receiver, Bradley, III and Maria now contend, has submitted two liquidation plans that fail to take that 1/3-split factor into account. *Id.* at 2 n. 2. In any event, Bradley, III insists that the Receiver has already

> liquidated some $20 million worth of assets originally owned by and therefore credited to Bradley, III (Ex. to Doc. # 980 at 12). Accordingly, the Receiver appears to have already liquidated sufficient assets to satisfy all of Bradley, III's financial obligations in this case.

8

Doc. # 1025 at 4.

How Bradley, III and wife Maria arrive at that conclusion is problematic; they essentially accuse the Receiver of financial sleight of hand:

> the Receiver appears to have ignored millions of dollars that should be credited to Bradley, III's account, and to have charged Bradley, III's account with millions of dollars in intercompany transactions and other expenses, the vast majority of which appear unjustifiable. The immediate effect of the Receiver's artful accounting is to suggest that Bradley, III has not satisfied even his forfeiture obligation, which the Receiver cites as justification for additional asset liquidations. In addition, the Receiver's accounting forces Martin and Maria Bradley to shoulder more of the defendants' collective financial burden to the benefit of BioMed Plus. In doing so, the Receiver has effectively resentenced Bradley, III and imposed higher forfeiture, restitution and fine amounts than those imposed by this Court.

Doc. # 1025 at 5. Bradley, III and wife then detail various transactions and debits and credits which should have, but were not, properly accounted for by the Receiver, thus leading to the "effectively resentenced" claim. *Id.* at 5-11.

In the meantime, Norma has filed a further objection to the Government's proposed liquidation plan and Receivership extension. "Consent Orders are to be construed according to accepted contract principles," she reminds, doc. # 1034 at 1, so she "simply asks this Court to enforce the Consent Orders as written," rather than enable the Government to rewrite them in its favor. *Id.* at 2-3.

Norma then contends, that, boiled down, the Government is simply not satisfied with the outcome of the Receiver's liquidation efforts, or her proposed allocation of liquidated assets, because neither adequately enable the Government's aim of collecting Bio-Med's entire sentencing obligation, even at others' expense. *Id.* at 2-6. That is why, she concludes, the Government is now trying to unilaterally rewrite the contract formed by the Consent Orders. *Id.*

Most importantly, Norma points out, the $39.5 million has now been collected and thus (since the Court clarified that the joint and several forfeiture obligation must be paid first), the forfeiture judgment must be deemed paid, in which case the Government was supposed to (under the Preliminary Consent Order, doc. # 598 at 3) file a Satisfaction of Judgment -- but it failed to timely do so. The Court should thus deem the Satisfaction filed, in which case, she concludes, it is too late for the Government to pursue -- under the *Consent Orders* (as opposed to under other, statutory means) -- undisclosed assets (*i.e.*, the Government should have done so before the Receiver liquidated $39.5 million in Bradley assets, because, as this Court previously indicated, the Consent Orders which grant the Government that contractual authority terminate once the $39.5 million is paid; once they terminate, Norma argues, so goes the Government's *contractual* authority to pursue the undisclosed assets). *Id.* at 6-7.

For that matter, Norma emphasizes, the Government's proposed liquidation plan violates the *Bradley* "marching orders" that the Receiver pursue an equal allocation of the forfeiture among the defendants, while the Government's plan takes nothing from Bio-Med. *Id.* at 8. Even at that, she complains, the Government simply ignores Norma's various

9

property interests in its quest to liquidate specified assets. *Id.*

Finally, Norma says that the Consent Orders spoke to paying *only* forfeiture, not fines. So if the Government is upset that Bio-Med cannot pay its fine, then it must pursue the ordinary fine-collection remedies open to it, and not rewrite the Preliminary Consent Order and otherwise advocate the misuse of the Receiver's powers. *Id.* at 9. And Norma, it must be remembered, "did not contractually agree to be responsible for her husband's fines." *Id.* Nor, of course, does the law authorize "the Government to collect fines from a non-defendant spouse." *Id.* The Government, she concludes, therefore must enter a Satisfaction of Judgment and the Receivership should cease, not be extended. *Id.* at 10-11.

In yet another follow-up brief (understandable, as she credibly asserts that a lot of her property is on the chopping block here), Norma points out that the "4 Mall Court" property should not be liquidated because, again, the $39.5 million Forfeiture has been satisfied, and if the Receiver amends her petition to use it to pay either Bradley defendant's fine, then she objects to *her* interest in it being used to pay her husband's fine. Doc. # 1036 at 2-3. Her husband, Bradley, Jr., joins her on that score. Doc. # 1037.

**B. Jurisdiction**

The Court has meticulously detailed the tangled mess of arguments and numbers -- spread over an *inch* of briefs -- so that the Eleventh Circuit can better grasp the complexity and density of still-extant issues mired in jurisdictional uncertainty. Appeals have been taken from a variety of rulings, and it is unclear whether this Court has been divested of jurisdiction to act. As noted in *Bradley*:

> It is true that a notice of appeal typically divests a district court of jurisdiction over matters raised on appeal, but this general rule does not apply to collateral matters not affecting questions presented on appeal. *Mahone v. Ray*, 326 F.3d 1176 (11th Cir.2003). Nor does it prevent a district court from taking action in furtherance of an appeal. *Id.*; *see also* A.Ides, The Authority of a Federal District Court to Proceed After Notice of Appeal Has Been Filed, 143 F.R.D. 307, 308-09(1992).

*Bradley*, 2007 WL 1464058 at * 9.

This much is certain: after sentencing, the Government renewed its motion to extend the authority of the Court-appointed Monitor and Receiver over various Bradley assets in order to ensure payment of all monetary penalties. Doc. # 775. Over Bradley, Jr.'s objection, doc. # 784, the Court granted the motion and thus both continued and expanded the Receiver's tenure post-conviction. Doc. ## 789, 790; *see also* doc. ## 806, 807, 809, 811, 812 (appeals of those Orders by Bradley, Jr., Bradley, III, Tellechea, Norma and Maria); ## 843, 845 (Bradley, Jr. and his wife Norma moved for a stay pending appeal of further liquidations of assets Norma partly owns); # 858 (denied); # 863 (Norma's appeal of Order doc. # 858); doc # 934 (the *Bradley* Order continuing the Receivership); doc. ## 935, 938, 943, 947 (both Bradleys and their wives appealed that); doc. # 991 (follow-up Order extending Receivership to 10/31/07). As a result, the Receiver has commenced liquidation of various "hard" (*e.g.*, realty) assets.

Yet, the Eleventh Circuit has not seen fit to

stay this Court's actions, much less resolve the jurisdictional issue. For that matter, so many assets are up in the air, on the chopping block or close to it, that it is reasonable to conclude that the Court is aiding appellate jurisdiction by tying up the loose ends that were bound to have been created once the liquidation train left the station. Meanwhile, no one has briefed the Court (thus, it is unclear) whether an appellate stay would cause asset wasting, since markets fluctuate over time, the Receivership costs a lot of money to maintain (*see* Monitor's 9/27/07 Report[8] at 8 ($2,067,169 thus far)), and the Receiver's filed reports demonstrate that many transactions are in the process. *See id.* at 1 ("4 Mall Court" property contract has been approved by the Monitor; the Receiver continues with plans to close on the sale of a Key West, Florida residence, etc.); doc. # 1027 (the Receiver is ready to resolve, via proposed Order to this Court, disposition of third-party claims against Bradley interests).

### C. Clarification

The Court therefore will clarify what it can (it cannot go unnoticed that a variety of dollar amounts have been bandied about by the Government, Receiver and Monitor; very few have been consistent). A handful of issues emerge from the latest pile of briefs:

(1) the reach and sequence of forfeiture- and payment sentencing payments;

(2) the adequacy of innocent-spouse, asset sorting by the Receiver (most particularly, Norma's claim that *her* assets are being liquidated to pay for her husband's sentencing obligations);

(3) the adequacy of the Receiver's asset-sifting and accounting (*i.e.*, Bradley, III and his wife's claim that the Receiver "appears to have ignored millions of dollars that should be credited to Bradley, III's account, and to have charged Bradley, III's account with millions of dollars in intercompany transactions and other expenses, the vast majority of which appear unjustifiable," doc. #1025 at 5);

(4) whether the Government must file a Satisfaction of Judgment now that the $39.5 million forfeiture debt has been paid, and whether that affects its ability to pursue "undisclosed" assets;

(5) whether it is appropriate to charge interest on the sentencing obligations; and

(6) whether this Court should conduct an asset-sifting hearing, during which it would resolve the following sub-issues:

> (a) whether either proposed liquidation plan may be implemented without resolving the conflicting ownership claims raised above;
>
> (b) whether, in light of the Satisfaction of Judgment, the Government

---

[8] This should be filed in the record. *See* doc. # 1028. The Monitor is directed to file all of its reports in the record, rather than send them directly to the undersigned.

11

must *pursue*, rather than simply "auto-forfeit," the "undisclosed" assets (a sub-issue to that: whether those assets in fact w e r e undisclosed).

1. ***Forfeiture/Sentencing Payments***

As the Court said in *Bradley*,

> The parties cut a deal with respect to what assets could be subject to forfeiture. No such limitation exists for the Court's assessments, fines and restitution-the sentencing in this case. *See* doc. # 926, exh. A (Sentencing Tr.) at 5-6.
>
> After forfeiture, however, if the defendants have sufficient assets to satisfy their fines and assessments (again, restitution will likely be satisfied by forfeiture), they must be allowed to decide which assets to sell to pay their debt. Only when they fail to pay their debt can the Government step in and seize property -- normally under general judgment-enforcement mechanisms -- but here through the Receiver's authority as extended by this Court postconviction. Doc. # 790.

*Bradley*, 2007 WL 1464058 at * 7.

Under the latest (9/27/07 Monitor's) Report before the Court, "[t]he total amount of money received by the Receiver is in excess of $53 million. The amount available for distribution [to the Government] is in excess of $51 million." Monitor's 9/27/07 Report at 1; *see also id.* at 13 (showing total of "Significant Amounts Received" is $53,824,038). The Monitor thus advises:

> Under the Receiver's Liquidation Plan it appears that [the] forfeiture obligations of some of the defendants may have been satisfied through sales to date. Consideration [therefore] should be given to directing the suspense of future sales activity relating to assets of those individuals in so far as those sales may be scheduled under the procedures relating to the forfeiture order rather than satisfaction of fines.

*Id.*; *see also id.* at 10 ("it appears that forfeiture obligations of some of the defendants may have been satisfied ... [so the Government should] consider directing the Receiver to ask the court to suspend sales activity of the Receiver relating to assets of those individuals in so far as those sales may be scheduled under the procedures relating to the forfeiture order rather than satisfaction of fines").

The Monitor's assessment supports much of what the Bradleys are saying here, and neither the Receiver nor the Government dispute that. Again, "the defendants' assets [shall] first [be used to] pay the $39.5 million in forfeiture, then their assessments, then restitution (for which they get full credit to the extent they have paid the $39.5 million in forfeiture), then fine principal, followed by fine interest." *Bradley*, 2007 WL 1464058 at 4. And because (a) the forfeiture obligation is joint and several *and* must be paid first; and (b) $39.5 million in fact has now been paid over to the Government, the Receiver is now in the "step 3 marching orders" zone. Thus, she no longer enjoys the plenary

12

authority flowing from the Consent Orders, so any asset sales must first be Court approved, and each defendant who has paid his $13.67 million forfeiture share now decides which among his marshaled assets will be sold to satisfy his sentencing obligations (fine and assessment).

Recall, too, that if any of these three defendants has not satisfied his $13.67 forfeiture obligation out of non-exempt or exempt assets, the other two shall equally contribute to pay it, given the joint and several liability factor.[9] To that end, the Court discerns no special carve-out for the wives' $3 million in cash, so the Receiver may now go ahead and apply that cash to the forfeiture obligation (if anything, this assists the wives, as cash is fungible and easily refundable should the convictions be overturned on appeal; real estate, in contrast, is not) -- *if* the $39.5 million forfeiture has not been satisfied. But it certainly appears that it has, in which case this money, if not shown to be in any way owned by the defendants, must be returned to the wives.

Next, this Court (in *Bradley*) addressed what must occur if the Receiver realizes more from liquidating Bio-Med than is necessary for its $13.67 million share of the forfeiture: that excess pays Bio-Med's $21,200 assessment and $26.5 million fine. And -- assuming that the Bradleys each will have paid their respective, $13.67 million shares by then -- any proceeds beyond that would then go to Bio-Med's owners (two of whom, the Bradley defendants here, also owe substantial fines), 2007 WL 1464058 at * 3, in which case the Receiver is pre-positioned to seize that excess -- to the extent any of it goes to the Bradley defendants -- to pay their sentencing obligations.

Evidently, however, there is no Bio-Med "forfeiture excess," and that is what's causing the rub here (*i.e.*, the Bradley objections insisting that the Government and Receiver are pursuing *Bradley* assets to pay *Bio-Med's* sentencing, as opposed to forfeiture debt). Worse, the Government is unclear whether, through its proposed liquidation plan, that in fact is its intent.

The Court can clarify this much: *that* will not happen. Again, only the forfeiture obligation is joint and several, not the sentencing obligations. What will happen is this (and the Court extends the Receivership's mission/tenure accordingly):

(1) In dollar terms the Receiver shall promptly report to this Court what Bio-Med has paid toward forfeiture (from the briefs the Court gathers that Bio-Med has paid its full $13.67 million share) and what it has paid toward its sentencing obligations (evidently, something far short of its total), and what (from any pending or anticipated liquidations) Bio-Med can reasonably be expected to pay further.

(2) If Bio-Med has paid its $13.67 million forfeiture obligation, and that payment in fact has benefitted one or both of the Bradley defendants, then the Receiver shall inform the Court what that amount is, with the aim of then liquidating (from

---

[9] With over $39.5 million collected, however, a subsidiary issue is, who has not paid their $13.67 million forfeiture share? In a follow-up brief to be filed within 10 days of the date of this Order, the Receiver and the Government shall, after conferring with opposing counsel, thus inform the Court who has 100% paid his respective, $13.67 million share (as noted *supra*, Bradley, III claims he has paid both that share and all of his other criminal penalties, but of course that claim is premised on *Bradley's* accounting of what assets that the Receiver has collected in fact should be credited to him).

13

the asset pool of such beneficiary) first his non-exempt, then his exempt, assets until that defendant meets his $13.67 million forfeiture share (the Court will entertain a motion from such defendant on which of his exempt assets he prefers to be liquidated first, etc.).

(3) Once all three defendants are shown to have paid their $13.67 million forfeiture share, then (a) the Receiver shall not, directly or indirectly, liquidate any Bradley asset to pay Bio-Med's sentencing obligation (again, the Bradleys are not jointly and severally liable on *that* debt); (b) for any Bradley sentencing debt left unpaid, the Receiver shall adhere to the "step 3" regime (each Bradley defendant gets to choose which of his remaining assets are to be liquidated first until his debt is paid).

(4) All interested parties shall, within 15 days of the date this Order is served, brief the Court on the fine-interest issue (the Government expressly excluded interest in its proffered liquidation plan -- does it concede the defendants' contention that no such interest is due?).

(5) After steps (1) - (4) are met, the parties shall in good faith confer over what, if anything, remains to be paid and what asset-sifting/sorting they can agree upon, then jointly move the Court for an asset-sorting hearing if they cannot (the Court will then hear testimony and resolve any conflicting ownership/improper payment-crediting claims).

(6) Also after steps (1)-(4), and especially if step (5) cannot be fulfilled regarding joint-agreement on what remains to be paid, the Government and Receiver shall submit to the Court a unified, clear accurate enumeration of (a) who has paid what amounts of forfeiture, sentencing obligations, etc., and what, consistent with this Court's clarification, is proposed in the way of any further liquidation. The defendants shall have 10 days thereafter to object.

It goes without saying that this is more of an accounting and mathematical exercise at this juncture, and less a legal dispute. Also, the Government and Receiver are directed to rebut each and every allegation the Bradleys and their wives make (the Alex Zipperer evidence, the aforementioned deeds and other documents showing true ownership, etc.). In so doing, many of the disputes raised here *should* be resolved without *inches* of briefs, hearings, etc.

### 2. *Motion # 1027*

In motion # 1027, the Receiver seeks to resolve third-party claims against Bradley entities. She provided 10-day notice to those third parties, and no objections have been received from them. Norma objects, however, on the grounds that the Receiver has liquidated $39.5 million already, so she should stop now. Doc. # 1031. This of course ignores the fact that the Court expanded the Receivership to liquidate Bradley/Bio-Med assets to cover sentencing obligations. Still, even the Government seems to indicate that the projected liquidation amounts may exceed all forfeiture and sentencing obligations. Doc. # 1023 at 7.

Nevertheless, all the Receiver is proposing to do here is resolve and pay the just debts that the Bradley entities owe to third parties, and this goes more to preserving the status quo (and thus aid the appeal) than disrupting it. Accordingly,

14

the Court grants motion # 1027 and will this day enter the Receiver's proposed Order.

### III. **CONCLUSION**

Accordingly, the Government's motion (doc. # 1023 at 8 ¶ 11) to extend the Receivership to 12/31/07 is ***GRANTED***. The Receiver's motion (doc. # 981) for an "Order Approving Proposed Allocation of Norma and Maria Bradleys' Contributions For Payment Of The Forfeiture Judgment" is ***DENIED*** without prejudice to renew it after complying with the foregoing instructions. The same ruling applies to motion # 1032 (Receiver's motion to approve sale of "4 Mall Court"). Defendant Martin J. Bradley, Jr.'s motion (doc. # 994) for an extension of time to respond to the Receiver's motion is ***GRANTED***. Norma Bradley's motion for a hearing, doc. # 993, is ***DEFERRED*** pending further briefing. Finally, the Court ***GRANTS*** motion # 1027, and will reach all other pending motions, including # 1041 (Receiver's motion to compel Maria Bradley to turn over $2,830,605.51 in income tax refunds) in forthcoming Orders.

This  16  day of October, 2007.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA