UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES

v.                                    405CR059

MARTIN J. BRADLEY, III, et al.

## ORDER

## I. BACKGROUND

No other criminal case in the Court's memory has consumed as many judicial resources as this. Between the Magistrate Judge and the undersigned, over *two hundred* pages of judicial rulings[1] have been generated in an attempt to resolve the criminal liability and forfeiture/sentencing issues arising from this, a complex criminal RICO prosecution stemming from a prescription-drug-based fraud scheme.

The scheme was advanced in varying degrees by eight individual and two corporate defendants. Doc. # 1; # 106 at 2. A jury convicted Martin J. Bradley, Jr., Martin J. Bradley, III, Albert Tellechea and Bio-Med Plus, Inc. (Bio-Med). Doc. ## 738-41.

The Government then sought criminal forfeiture but the parties -- including each Bradley's wife -- settled via Consent Orders directing $39.5 million in forfeiture and, to that end, appointing a Receiver and Monitor to marshal the defendants' forfeited assets, including Bio-Med and its inventory. Doc. # 598 ("Consent Preliminary Order of Forfeiture"); # 599 ("Order Appointing Receiver and Monitor"). Those Orders identified "exempt" and "non-exempt" assets over which the Receiver retained varying degrees of liquidation authority, depending on whether and when each defendant met his forfeiture obligation. *See U.S. v. Bradley*, 513 F.Supp.2d 1371 (S.D.Ga. 2007); doc. # 934.

The parties also agreed that if the defendants failed to disclose any forfeitable property to the Government, the Government could pursue same without restriction, and in addition to the $39,500,000 forfeiture (hence, they would constitute "additional forfeitures"):

> To the extent that assets are discovered or identified which have not been identified to the government in the course [of] negotiations related to this order, the [G]overnment is free to pursue at its discretion those newly discovered assets in addition to the $39,500,000 judgment entered in the Preliminary Order of Forfeiture.

Doc. # 599 at 13.

The Court later extended the Receivership to liquidate the defendants' assets (except Tellechea's) to pay their sentencing obligations. Doc. ## 789, 790. Tens of millions of dollars are in play. *Bradley*, 513 F.Supp.2d at 1372.

The defendants appealed the judgments against them in 2006. Doc. ## 743, 749, 753, 755. Those appeals are pending. Except that it is now 2008 and the Court is *still* issuing post-

---

[1] *See* Orders and Judgments docketed at ## 4, 9, 20, 22, 24, 26, 28, 29, 34, 49, 60-63, 65, 67, 70, 72, 74, 75, 84, 89, 100, 110, 118, 120, 126, 129, 138, 140, 144, 147, 148, 155, 165, 166, 182, 203, 205, 206, 210, 223, 231, 232, 241, 249, 261, 262, 265, 269, 273, 276, 290, 292, 295, 298, 299, 309, 312, 318, 324-327, 336, 338, 340, 345, 349, 350, 356, 363-365, 373-376, 384, 385, 393, 395, 404, 413, 415, 421, 422, 426, 433-436, 441, 443, 445, 453-457, 460, 467-471, 477, 478, 495, 499-501, 505, 506, 508-512, 522, 523, 527-529, 531, 537-539, 541, 543, 544, 546-552, 554, 555, 562, 598-601, 603-07, 613-615, 619, 622, 631, 635, 639, 640, 642, 646, 647, 651, 652, 657, 688-691, 700, 702, 722, 727, 737, 738-741, 745, 746, 748, 750, 778-780, 786, 789-791, 803, 805, 808, 826, 847, 849-851, 857, 859, 872, 882, 885, 892, 900, 903, 905, 906, 909, 921, 933, 934, 955, 956, 960, 969, 988, 989, 991, 992, 1005, 1016, 1026, 1028, 1040, 1042, 1043, 1048, 1055, 1057, 1069, 1076, 1079.

judgment Orders in an effort to wind up the forfeiture/sentencing phase of this case.

Much of the litigation has flowed from: (1) the entanglement of the Bradley wives' interests in their husbands' assets, *see, e.g., Bradley*, 513 F.Supp.2d at 1379-80; *U.S. v. Bradley*, 2007 WL 3046490 at * 4-5 (S.D.Ga. 10/16/07) (unpublished); doc. # 1042, *as amended*, doc. # 1057; and (2) issues like whether the defendants owe interest on the fines imposed against them; the proper accounting of assets collected for each defendant (*i.e.*, who owned what, and thus how much should be credited to each defendant on his forfeiture/sentencing obligations); the proper priority for forfeiture/sentencing obligation payments, *Bradley*, 513 F.Supp.2d at 1375-77; and whether any defendant has actually met his $13.16 million forfeiture obligation (at that point the Receiver's asset-liquidation authority is altered, *see id.* at 1377). Familiarity with the facts and issues set forth in the Court's prior orders to date is assumed here.

Much of the delay in this case has arisen from the parties' failure to sit down and review property-ownership documents and *respond* to each others' assertions. The Court thus ordered them to meet in good faith. *Bradley*, 2007 WL 3046490 at * 13. In extending the Receivership's tenure to 12/31/07 (it has thus expired, and is now sought to be renewed here), the Court also provided additional instructions:

> (1) In dollar terms the Receiver shall promptly report to this Court what Bio-Med has paid toward forfeiture (from the briefs the Court gathers that Bio-Med has paid its full [$13.16] million share) and what it has paid toward its sentencing obligations (evidently, something far short of its total), and what (from any pending or anticipated liquidations) Bio-Med can reasonably be expected to pay further.

> (2) If Bio-Med has paid its [$13.16] million forfeiture obligation, and that payment in fact has benefitted one or both of the Bradley defendants, then the Receiver shall inform the Court what that amount is, with the aim of then liquidating (from the asset pool of such beneficiary) first his non-exempt, then his exempt, assets until that defendant meets his [$13.16] million forfeiture share (the Court will entertain a motion from such defendant on which of his exempt assets he prefers to be liquidated first, etc.).

> (3) Once all three defendants are shown to have paid their [$13.16] million forfeiture share, then (a) the Receiver shall not, directly or indirectly, liquidate any Bradley asset to pay Bio-Med's sentencing obligation (again, the Bradleys are not jointly and severally liable on *that* debt); (b) for any Bradley sentencing debt left unpaid, the Receiver shall adhere to [as set forth in *Bradley*, 513 F.Supp.2d at 1377] the "step 3" regime (each Bradley defendant gets to choose which of his remaining assets are to be liquidated first until his debt is paid).

> (4) All interested parties shall, within 15 days ... brief the Court on the fine-interest issue (the Government expressly excluded interest in its proffered liquidation plan -- does it concede the defendants' contention that no such interest is due?).

> (5) After steps (1) - (4) [were] met, the parties [were to] in good faith confer over what, if anything, remains to be paid and what asset-sifting/sorting they can agree upon, then jointly move the Court for an asset-sorting hearing if they cannot (the Court will then hear testimony and resolve

any conflicting ownership/improper payment-crediting claims).

(6) Also after steps (1)-(4), and especially if step (5) cannot be fulfilled regarding joint-agreement on what remains to be paid, the Government and Receiver [were to then] submit to the Court a unified, clear and accurate enumeration of (a) who has paid what amounts of forfeiture, sentencing obligations, etc., and what, consistent with this Court's clarification, is proposed in the way of any further liquidation. The defendants [would then] have 10 days thereafter to object.

*Bradley*, 2007 WL 3046490 at * 12-13.

Finally, the Court "reminded the parties that this should be more of an accounting and mathematical exercise at this juncture, and less a legal dispute." *Id.* Also, the Government and Receiver were directed to rebut allegations the Bradleys made concerning ownership of assets. *Id.* The Court underscored the fact that "many of the disputes raised here *should* be resolved without *inches* of briefs, hearings, etc." *Id.*

Since that Order (doc. # 1042), over 60 more filings have loaded up the docket,[2] including yet another motion to extend the Receivership -- this time until 3/31/08. Doc. # 1094; *see also* doc. # 1099 (the Government concurs); # 1100 (Norma Bradley objects); # 1101 (Bradley III and his wife object).

The Court also has entered additional Orders, including one which directed the Government and Receiver to respond to former-defendants' arguments against the Receiver's efforts to collect on debts she claims they owe Bio-Med, *U.S. v. Bradley*, 2007 WL 3132670 (S.D.Ga. 10/22/07) (unpublished) (hereafter, the "third party debt" issue); doc. # 1048,[3] and another that sought further information relating to the "PDMA" drugs (Bio-Med pharmaceutical assets slated for destruction for want of proper "paperwork lineage") discussed in prior Orders. *See* doc. ## 903, 933, 1044, and *U.S. v. Bradley*, 2007 WL 3046516 (S.D.Ga. 10/17/07) (unpublished).

## II. ANALYSIS

### A. Receiver's Liquidation Progress

As of 10/29/07, according to the Receiver, "no amount of the Forfeiture Judgment [had] been paid on behalf of any Defendant." Doc. # 1061 at 1. By then the Receiver had collected $44,311,216, of which $40,304,843 was being held in Receivership bank accounts, $2,000,000 has been deposited by Norma Bradley into the registry of the Court and only $2,000,000 had been delivered to the U.S. Marshal ($1,000,000 by Maria Bradley pursuant to the Consent Forfeiture Judgment and $1,000,000 of the proceeds of liquidations of property owned by Martin J. Bradley, III). *Id.* at 1-2. Then-pending objections to her proposed liquidation plan stalled her liquidation efforts, the Receiver claimed.

---

[2] On the eve of Order # 1042, the Receiver moved the Court to direct Maria Bradley "to turn over to the Receiver $2,830,605.51 she received for income tax refunds." Doc. # 1041. The Court did not reach it because the time to respond to it had not yet elapsed. Maria and her husband have since responded by moving the Court to deposit that as well as a 2005 tax year refund into the Court's registry. Doc. # 1062. Pending a ruling on this motion, defense counsel is retaining in an interest-bearing account yet another tax refund, this time from the 2006 tax year, totaling $2,632. Doc. ## 1091, 1092.

[3] She has done so, doc. # 1070, and the three debtors have replied. Doc. ## 1074, 1077, 1081; *see also* doc. ## 1083, 1086, 1096.

3

Noting her earlier response (doc. # 1047) to those objections, the Receiver explained that

> the Bradley Defendants and their wives have raised objections to many of the Receiver's proposed allocations of the proceeds of properties she has liquidated and otherwise collected. Of the amounts [the Receiver then specified], only the following amounts for each Forfeiture Defendant is not subject to any objection: Bio-Med $20.7 million, Martin J. Bradley, III $1.1 million and Martin J. Bradley, Jr. $62,000. Many of the objections raised involve factual disputes as to the appropriate ownership interests of the various parties as to certain entities whose property has been, or may be, liquidated. Because the Receiver is unable to resolve these factual disputes, she has identified them to the Court for resolution.

Doc. # 1061 at 2. Since ownership issues needed resolution, and the Government was advancing its own liquidation plan, she concluded that an evidentiary hearing might be warranted. *Id.* at 2-3. In response, the Bradleys insist that the delivery (to the Receiver) of the money and personal property attributable to the Bradley defendants has discharged part if not all of the Bradley defendants' forfeiture/sentencing obligations. Doc. # 1064 at 1.

By the time of the Receiver's 12/12/07, 30-day report, some $62,436,867 in assets, "net of contingent assets," had been liquidated. Doc. # 1089 at (EC/EMF screen page) 6. The Receiver's "Summary of Proceeds" reveals a 12/1/07 total of $44,238,199. *Id.* at 6. Yet, there are still plenty of complications hindering final liquidation, proper allocation of the proceeds, and thus payment to the U.S. Government. She cites, as an example, the fact

> [t]hat BioMed amounts available to pay the $39.5 million Forfeiture judgment are subject to BioMed's claims process.[4] In [the] schedule [showing how the Receiver has allocated liquidation proceeds], no provisions for claims have been made.

*Id.* at 8 (footnote added). Her "[a]nalysis also excludes an alleged $7.4 million shareholder loan to BioMed which Maria and Bradley III claim are due to them." *Id.* Disputes also remain over realty, cash and other tangible assets. They arise not only from the Bradley defendants and their wives but other pending litigation (in this and other courts). *Id.* And,

> in the event the following assets are classified as additional forfeitures, they will not be available to pay $39.5 million forfeiture judgment or the monetary penalties[:] 22 Wrights Point and 72.21 acres in Georgia.

*Id.* There also remains litigation (in another court) to determine the rightful purchaser of a boat slip subject to forfeiture. *Id.* And, the third-party debt issues remain. *See infra* Part II(G)(2). Too, the Court still has before it the Receiver's motion to dispose of what are known as "PDMA" drugs. *See U.S. v. Bradley*, 2007 WL 3046516 (S.D.Ga. 10/17/07) (unpublished); doc. # 1044.

Meanwhile the Monitor, who is *monitoring* the Receiver, keeps coming up with different numbers. It says (as of its 10/30/07 Report), that the Receiver has "in excess of $51 million" available for distribution. Doc. # 1098-2 at 2,

---

[4] Third party creditors, etc., needed to be paid ahead of payment to the Government, so the Court has been routinely authorizing a notice and claims process. *See, e.g.*, doc. ## 1076, 1082, 1095.

15; # 1098-3 at 20.[5] The Monitor furnishes an asset liquidation chart of its own, which reveals a "Potential Liquidation Total" of $74,349,452. *Id.* at 18, 24. Little changed from this period to its 12/19/07 Report period. *See* doc. # 1098-3 at 2; # 1098-4 at 2, 8 ($74,151,552).

As for how much of the forfeiture obligation has been satisfied, the Monitor deviates from the Receiver. The Monitor said this on 9/27/07:

> Under options implicit in the [Receiver's Liquidation] Plan it appears that forfeiture obligations of some of the defendants may have been satisfied through the sale of their assets to date. As a result, it follows that the [Government] consider directing the Receiver or ask the court to suspend sales activity of the Receiver relating to assets of those individuals in so far as those sales may be scheduled under the procedures relating to the forfeiture order rather than satisfaction of fines.

Doc. # 1065 at 2 ¶ 2.1.

Thus, there has been *no* agreement between the Receiver and the Monitor on *when* to cease liquidating the defendants' assets in order to satisfy the defendants' forfeiture obligations.

In short, this area remains a tangled mess, and the parties have yet to agree upon and thus present a clear, accurate recitation of who owns what, how much has been collected, who should get payment credit, and what precise forfeiture/sentencing amounts remain to be paid. And now a new asset has surfaced -- tax refunds. The parties are fighting over that, too.

---

[5] The Government (by its silence) evidently has decided that it has no problem with the Receiver's alleged conflict as described by this Report. Doc. # 1098-2 at 2, 14-15; *see also* doc. # 1098-3 at 3, 18-19.

**B. Tax Refunds**

Martin J . Bradley, III and Maria Bradley move the Court for leave to deposit their personal federal tax refund checks ($756,547.54 for tax year 2005, and $2,074,057.97 for tax year 2002) into an interest bearing account, contending that the Receiver seeks them, but given the aforementioned ownership/valuation disputations, the funds are best placed in the Court's registry. Doc. # 1062. *See supra* n. 2. This motion need not be reached in light of the result reached below, though it may have to be resolved in the post-appeal future.

**C. Fine Interest**

A big factor influencing whether the Receiver can conclude that the forfeiture/sentencing obligations have been satisfied (thus terminating the Receivership) is the amount of interest that the Bradley defendants must pay on their fines. Both Bradley defendants and their wives now insist that the Court has authority (under 18 U.S.C. § 3572(f)(3)) to, and should, reduce or limit the interest accrued upon their fines.[6] Doc. # 1064 at 1-8. They argue that it is absurd to freeze the Bradley defendants' assets (via exertion of Receivership control over same) and then penalize these defendants by subjecting them to interest that would not have accrued had their

---

[6] While no interest accrues on the forfeiture amount, doc. # 598 at 3, each Sentencing Judgment specifies that "[t]he defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 19 U.S.C. § 3612(f)." *See, e.g.*, doc. # 740 at 7. No such payment was made by the fifteenth day, so interest accrues on the restitution and fine obligations. Actually, since the restitution is, via consent order, equated to the forfeiture, which is exempt from interest, only each defendant's fine can run the interest clock.

assets not been frozen and their fines thus timely paid. *Id.* at 2-4.

The Government's "tough-cookies" response:

> The Judgment Orders entered against Defendants Bio-Med Plus, Martin J. Bradley III and Martin J. Bradley, Jr. each provide the following: "The defendant must pay interest on ... a fine of more than $2,500, unless the ... fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f)." The Defendants did not pay their fines within fifteen days of the Court's judgment; they now must pay interest. *See United States v. Simmons*, 2007 WL 2345246 (S.D.Ga.) (recognizing that the defendant "did not pay his fine within 15 days of the Court's judgment, so now he must pay interest"). Importantly, none of the Defendants have moved the Court to modify the fine imposed by eliminating the interest obligation.

Doc. # 1066 at 1.

In fact, while no formal motion has been filed, the defendants have repeatedly objected to the interest obligation, *see, e.g.*, doc. # 993 at 6; # 1064, and it is telling that the Government fails to respond to the defense's main argument -- that it is absurd to in effect freeze their assets and thus prevent them from paying their fines, then charge them interest for ... failing to pay their fines.

For that matter, the defendants cite the same statute this Court analyzed in *Simmons* -- 18 U.S.C. § 3572(d)(3). That statute provides:

> A judgment for a fine which permits payments in installments shall include a requirement that the defendant will notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine. Upon receipt of such notice the court may, on its own motion or the motion of any party, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

Here the Court ordered lump-sum payments, not installment payments, so § 3572(d)(3) does not apply. *Baez v. U.S.*, 2007 WL 638198 at * 3 (D.Conn. 2/23/07) (unpublished) ("[B]ecause there is no installment schedule in place for the court to modify, § 3572(d)(3) does not apply").

Defendants contend that § 3572(d)(3) should be read in conjunction with 18 U.S.C. § 3612(f)(3)(A), which provides that "[i]f the court determines that the defendant does not have the ability to pay interest under this subsection, the court may ... waive the requirement for interest." *Id.*, cited in doc. # 1064 at 5.

Whether a court can modify the *interest* (as opposed to original fine) obligation fetches some fairly technical if unsatisfying distinctions. *See U.S. v. Messier*, 2007 WL 1821687 at * 1 (D.Conn. 6/25/07) (unpublished) (discussing when § 3612(f)(3) may be applied to restitution obligations); *U.S. v. Higham*, 2006 WL 3359430, * 2 (N.D.Ill 11/16/06) (unpublished). Most courts say that "only the government has the authority under 18 U.S.C. § 3573 ... to petition for modification or remission of a fine...." *U.S. v. Muncy*, 137 Fed.Appx. 582, 582 (4th Cir. 2005). Does that extend to interest to be paid on it? In light of the result reached below, it is not necessary to reach this issue now. However, the Court has hashed out the arguments because there remains a fairly good chance that it will have to revisit this issue in

the future, depending on how the appeals are resolved.

### D. Stay of Property Sale

Contending that the Receiver has already collected more than enough to satisfy his $13.16 million forfeiture obligation, defendant Martin J. Bradley, III moves the Court to stay the sale of his Key West, Florida property. Doc. # 1075. The Receiver disagrees. Doc. # 1084 at 2 (insisting that she "has allocated [only] approximately $9.446 million from the liquidation of and/or collected from assets, which allocation is undisputed, to Bradley, III for payment of his $13.16 million portion of the Forfeiture Judgment"). Bradley III disputes the values that she assigns to the disputed allocations, so the sale should be stayed until the Court resolves them. Doc. # 1090. This has been a negotiating-table issue, and in light of the parties' joint consent motion reached *infra*, the Court denies motion # 1075 as moot.

### E. Settlement Conferences

As noted in the foregoing sections, plenty of issues continue to swirl around in this case, yet remain unresolved. The Bradley defendants and their wives noted, however, that there would be an 11/2/07 "conference for all interested parties (including counsel for the Receiver and the Government)" to resolve the questions then raised surrounding the Receiver's liquidation plan, and thus suggested that the Court "not take up these questions until the results of that conference are communicated to the Court." Doc. # 1064 at 1 n. 2.

The Receiver reported that the 11/2/07 conference occurred but did not globally resolve all remaining issues. However, the parties were still negotiating, and she would notify the Court if a hearing is required. Doc. # 1071. Norma Bradley's 12/26/07 "response" (stating neither approbation nor opposition to the receivership-extension motion) indicated that she also continued to negotiate. Doc. # 1097.

The Government announced that on 1/7/08 it would identify the "issues it believes the Court should address at the hearing proposed by the Receiver." Doc. # 1099. On 1/7/08, it represented "that the parties are attempting to resolve certain issues so that a hearing will not be required at this time. The Government expected to advise the Court on further developments by Friday, [1/11/08]." Doc. # 1103. No "advice" was received on 1/11/08.

However, on 1/18/08 the Receiver, "solely in her capacity as Receiver for [Bio-Med]," the Bradley defendants (hence the "Forfeiture Defendants"), the Government, and the Bradley wives ("the Movants") jointly moved the Court

> for an order (1) staying the Receiver's liquidation of certain receivership assets during appeals, (ii) staying the accrual of interest on the Court's judgments for restitution and fines in the above-styled case from the date the order is entered by the Court, and (iii) extending the Receiver's deadline to satisfy the Consent Preliminary Order of Forfeiture (Doc. #598) ("Forfeiture Judgment").

Doc. # 1106 at 1.[7]

To that end, the movants state that (a) they

---

[7] The face of this motion mentions defendant Albert Tellechea, doc. # 1106 at 1, but no signature from his counsel shows up on the motion's signature pages, so the Court presumes that the motions's drafter erroneously included Tellechea's name. Tellechea, for that matter, has no dog in the above-detailed forfeiture/sentencing obligation/liquidation fight.

7

"have been unable to agree on allocation of receivership proceeds and the Receiver's liquidation of certain receivership assets"; (b) the Receivership-extension motion is still pending; (c) because most of the liquidation-plan objections have not been resolved, the Receiver has still not paid the Forfeiture Judgment; and (d) settlement conferences held on 11/2/07, 1/4/08 and 1/8/08 failed. *Id.* at 4 ¶ 9. But all agree

> that resolution of the Objections is fundamental to allocation of receivership proceeds to pay the Forfeiture Judgment as directed by [this Court]. The Movants further agree that there are issues pending on appeal that are fundamental to the resolution of the Objections; including, but not limited to, whether [this] Court had authority to extend the receivership to collect monetary penalties and whether the Court has authority to assign liability for payment of one-third of the Forfeiture Judgment to each of the Forfeiture Defendants.

*Id.* at 4.

Thus, the Movants have worked out a "stand-still" Consent Order, which this Court will enter alongside this Order, essentially locking down moneys and assets pending resolution of the pending appeals in this case. Doc. # 1106 at 4-8. Among the stipulations reached include the Government's motion to stay further interest on the fines (granted by the Consent Order); authority for the Receiver to sell the "4 Mall Court" property and retain custody of the proceeds pending further Court order; deposit of the afore-mentioned tax refunds in a joint-control (by the Receiver and Maria Bradley) account; an agreement that the Receiver will not liquidate specified properties, thereby enabling the Court to deny motion # 1075 as moot; and suspension of resolution of various other issues (*e.g.*, the shareholder loans to Bio-Med). *Id.*

## F. Issues Not Resolved by Motion # 1106.

The Court discerns no mention, however, of the "PDMA inventory" matters, much less the third-party debtor matter (*i.e.*, the Receiver's claims against acquitted defendants to whom Bio-Med lent money for defense costs).[8] The Court therefore assumes that the PDMA matter has been resolved. In the meantime, and especially for the purpose of ending any question that this case is on appeal (thus, *divesting* this Court of further jurisdiction to act), the Court will resolve the receivership-extension and third-party debtor issues here.

## G. Issues Resolved Here

### 1. Extending the Receivership

The Court grants the Receivership extension motion, doc. # 1094, and extends the Receivership indefinitely (it simply wastes this Court's resources to repeatedly handle extension motions, and no one is seriously suggesting that the Receiver is not moving with all deliberate speed in this case) until further Order of this Court.

### 2. Third Party Debt

In liquidating Bio-Med, the Receiver encountered Bio-Med's post-indictment, pretrial loans to former Bio-Med employees who were tried and acquitted in this case: Sara E. Griffin (two promissory notes totaling $255,357.12), Jose A. Trespalacios (two promissory notes

---

[8] As of 11/5/07, "[t]he Receiver's evaluation of all alleged non-pedigreed inventory [was] ongoing," doc. # 1068 at 3 ¶ 7, and this was assisted by an independent law firm's analysis. *Id.* at 1-2.

8

totaling $527,844.11) and Edwin Rivera, Jr. (two promissory notes totaling $335,682.40). Doc. # 925 at 1-2. These individuals sought cancellation of these debts because, they contend, they are entitled to indemnification from Bio-Med. *Id.* at 2 ¶ 7.

Because these loans are Bio-Med assets, the Receiver seeks guidance. *Id.* at 3-6. She thus moves the Court to determine whether they are entitled to indemnification by Bio-Med (thus, be excused from repaying those loans -- all three have requested the Receiver to cancel their notes and thus release the mortgages they gave as security, doc. # 925 ¶ 7). But she also filed a Florida state court proceeding against Trespalacios. Doc. # 1070 at 2-3.

In this Court the Receiver argues that only Griffin may be entitled to indemnification, and only for her reasonable legal defense expenses, not automatic 100% loan forgiveness. Court approval is required for that. Doc. # 925 at 4-5; *see also id.* at 6 (Receiver argues that if Griffin's defense costs did not consume the amount loaned, then Griffin may be required to pay the excess back); doc. # 1048 (Griffin, in a filing unrebutted by the Receiver and the Government, says she agreed to borrow up to $300,000 but actually received -- via Bio-Med's direct payment to her defense counsel -- only $255.357.12). Otherwise, concludes the Receiver, Trespalacios and Rivera must pay up. Doc. # 957 at 6.

The Receiver acknowledges that Bio-Med is a Florida corporation, that Florida law authorizes corporations to indemnify corporate directors, officers and agents who are successful in legal proceedings against them, and that Bio-Med's By Laws provide for same. Doc. # 925 at 3-4. Griffin (Bio-Med's former Controller), the Receiver concedes, therefore is entitled to actually and reasonably incurred indemnification costs. *Id.* at 5-6.

But Trespalacios and Rivera, the Receiver contends, were not Bio-Med officers, directors or agents; instead, they merely held ownership interests in Infustat, Inc., Seratech, Inc. and Dena, Inc. -- entities alleged by the Indictment to have been utilized in the fraudulent scheme that drove the convictions in this case. *Id.* at 5.

In response, Trespalacios -- joined by Rivera, doc. # 939 -- moves the Court to strike the Receiver's motion outright. Doc. # 937. "It is noteworthy," Trespalacios asserts, that

> in the Receiver's ... Motion, no mention is ever made of the crucial fact that there is a previously filed and still pending Florida state court action in Miami-Dade County entitled *Marta Alfonso, not Individually, but Solely in her Capacity as Receiver Over Martin J. Bradley, III, Martin J. Bradley, Jr. and Bio-Med Plus, Inc., Plaintiff v. Jose A. Trespalacios, Defendant*, Case No. 06-24353 CA 06, wherein the very subject matter presented in the Receiver's Motion is also in issue.

Doc. # 937 at 1-2; *see also* doc. # 957 at 2-3 (the Receiver acknowledges that she "filed an action in a Florida state court against Trespalacios to enforce promissory notes against [him] and to foreclose mortgages on [his] real property in Florida....");[9] # 1070 at 2-

---

[9] "The gravamen of the allegations of the Florida state court lawsuit," says Trespalacios,

> is that Trespalacios is responsible for payment of promissory notes and mortgages purportedly executed in favor of Bio-Med Plus, Inc. that relate to the financing of attorney's fees and costs expended by the defense in the prior criminal proceeding. The state

9

5 (explaining that the Florida action has become bogged down in a side-issue -- whether the Receiver should be disqualified there because, Trespalacios alleges, she represented him as an attorney and accountant during the criminal case before *this* Court; Trespalacios also counterclaimed in the Florida case, contending that he has a right to set-off against the Receiver's claim there with his right to indemnification from Bio-Med for payment of his defense costs in *this* case; the Receiver has countered in that case, as she does here, that he has no right to indemnification from Bio-Med; meanwhile, the Florida court has deferred ruling pending *this* Court's ruling).

Trespalacios further contends that this Court lacks jurisdiction because he has been acquitted here, and no other process has since been served upon him.[10] Also, the issue should be resolved

---

lawsuit also asserts claims against real property located in Miami-Dade County, Florida. In the Receiver's Complaint filed in Florida, no showing has occurred with respect to 28 U.S.C. §§ 754 or 1692 (2006) nor has the Receiver ever claimed in any pleadings, documents or responses that she ever formally complied with either statute. Thus, the only allegations of jurisdiction are found in the state court complaint and assert jurisdiction as being proper in the Florida state court.

Doc. # 937 at 2-3 ¶ 3. Trespalacios says he answered and counterclaimed in the Florida court and invoked defenses under Florida law. *Id.* at 3 ¶ 4.

[10] Normally, a receiver, with proper service, can obtain personal jurisdiction over anyone nationwide because "Congress has authorized nationwide service of process under ... the federal receivership statutes, 28 U.S.C. §§ 754 & 1692." *Warfield v. Arpe*, 2007 WL 549467, * 3 (N.D.Tex. 2/22/07) (unpublished). The Receiver here does not claim that she F.R.Civ.P. 4-served Trespalacios, Rivera or Griffin, over whom this Court otherwise lost jurisdiction when they were acquitted.

in the pending state court action in any event. *Id.* at 2.

He thus charges the Receiver with duplicative litigation: "Without question ... the Florida state court action addresses the identical issues presented by the Receiver's Motion.... Moreover, the state lawsuit was purposefully filed by the Receiver to collect monies allegedly due on a Florida promissory note, signed in Florida by a Florida resident with all payments, if any, allegedly due in Florida." *Id.* at 3.

Worse, he contends, she in effect seeks an "advisory" opinion from this Court on Florida-law governed issues. *Id.* at 6; *see also* doc. # 936 and attached supporting exhibits. And on top of all that, he insists, she has failed -- in both cases -- to comply with the federal statutory requirements necessary to pursue him in either forum. Doc. # 937 at 5 (citing 28 U.S.C. §§ 754 and 1692).

Finally, Trespalacios argues, he is entitled to prevail on the merits in the event that this Court reaches the Receiver's motion on the merits. Doc. # 936 at 3-5 (he succeeded in the legal proceedings against him, proceedings in which he was alleged by the *Government* to be a Bio-Med officer and director, if not its agent); *id.* at 4-11 (quoting trial testimony, including the *Receiver's,* showing that "Trespalacios and his related companies were agents of and/or related to Bio-Med and Martin Bradley"); *id.* at 11 ("It is undisputed that Trespalacios was an officer and director of both Seratech, Inc. and Dena, Inc. Additionally, it is similarly undisputed that Bio-Med Plus, Inc., had controlling interests in both entities"); *id.* at 12 (citing *Investors Ins. Group, Inc. v. Kling*, 712 So.2d 1258, 1258-59 (Fla.App. 1 Dist. 1998) (a parent company may indemnify someone who was a director or officer of a subsidiary corporation, if that person had taken the position at the request of the

parent company; president of subsidiary was entitled to indemnification after successfully defending himself in suit for unpaid taxes, interest, and penalties of subsidiary when he was president)).[11]

The Receiver responds that the debt Trespalacios owes to Bio-Med is unconditional and in the state court action he raised the indemnification defense "as an afterthought" just "to create the appearance that this issue was being litigated in another forum which had jurisdiction to decide the merits of this 'claim.'" Doc. # 957 at 4. She also debates him on the merits (*i.e.*, whether he was a Bio-Med agent, etc.). *See* doc. # 962 at 1-2.

The Receiver also argues that this Court does not need personal jurisdiction over Trespalacios because it already has jurisdiction over Bio-Med's property, and it is *Trespalacios* who is claiming against it (by insisting on indemnification, albeit as a defense in the aforementioned Florida action; and by resisting the Receiver's quest for a judicial declaration, here, that he is disentitled). Doc. # 957 at 5.[12]

Finally, the Receiver asserts that Trespalacios waived his right to claim indemnification against receivership assets because he failed to comply with 18 U.S.C. § 1963(l) (requires a claimant to timely petition the court for a hearing to adjudicate the validity of any claimed interest in RICO-forfeited property). Doc. # 957 at 5-6.

The Court explored these and several more such arguments and counterarguments in *Bradley*, 2007 WL 3132670, then cited *S.E.C. v. Ross*, 504 F.3d 1130 (9th Cir. 2007) (vacating, for lack of personal jurisdiction, receivership action against individuals who were not parties to an underlying SEC action), in examining the Receivership's (thus this Court's) jurisdiction in a district where receivership property is located. *Bradley*, 2007 WL 3132670 at * 2. *Ross* spoke to a receiver's duty to satisfy certain statutory filing requirements in order to obtain court jurisdiction over third parties and thus retrieve property from them. 504 F.3d at 1145-48.

Since the Receiver had not addressed the "*Ross*" filing requirements, and (at the time) it may not have been prudent for the Receiver to continue *this particular* layer of litigation if in fact she had succeeded in collecting all of the forfeiture and sentencing obligations, the Court deferred ruling on this issue but ordered further briefing. *Bradley*, 2007 WL 3132670 at * 3-4. The Receiver has since briefed the *Ross* issue. Doc. # 1070. And it is likely, she insists, "that receivership proceeds will be insufficient to satisfy all Court-allowed liabilities." *Id.* at 6.

---

[11] However, "[a] person who serves as a director, officer, and employee of a wholly-owned subsidiary 'at the request of' the parent corporation is not automatically an agent of the parent." LAW OF CORP. OFFICERS & DIR.: INDEMN. & INS. § 6:10 (*Testing scope of indemnification statute--Insiders--Director's service with another corporation*) (Feb. 2008).

[12] Yes, Trespalacios points out, this Court may have personal jurisdiction over the *convicted* defendants and Bio-Med's property, but not over Trespalacios, much less his real property which secures the Bio-Med notes he signed -- real property that is located in *Florida*. Doc. # 965 at 1-2.

Furthermore, he contends, the Receiver chose to sue him on the notes in a Florida state court, and so he is free to claim indemnification as a set-off without submitting to this Court's jurisdiction (*i.e.*, he has never been obligated to file a claim of any kind here). *SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992), he contends, recognizes this set-off right. The Receiver does not dispute, he points out, that she failed to comply with 28 U.S.C. §§ 754 and 1692, and that compliance is required to establish jurisdiction over him in any event. Doc. # 965.

In *Ross*, a receiver pursued non-parties to recover allegedly wrongful (securities laws violation-based) payments that had been made to them. The Ninth Circuit ruled that the receiver was first required to obtain personal jurisdiction over them. *Ross*, 504 F.3d at 1141-48. By failing to comply with 28 U.S.C. § 754 and § 1692, the receiver could not obtain district court jurisdiction over those third parties for the purpose of retrieving money or property belonging to the receivership estate. *Id.*

The *Ross* court aptly summed up the core jurisdictional principles driving the dispute here:

> *In personam* jurisdiction, simply stated, is the power of a court to enter judgment against a person. *In rem* jurisdiction is the court's power over property. Before a court may exercise the state's coercive authority over a person or property, some statute must authorize the act. For state courts, generally a state long-arm statute supplies all the authority that state courts require. By contrast, there is no general federal long-arm statute, so federal courts must look either to the long-arm statutes of the state in which the court sits, Fed. R. Civ. P. 4(k)(1)(A), or to specific federal statutes, Fed. R. Civ. P. 4(k)(1)(B), (C), (D) to authorize the exercise of jurisdiction. Since *Pennoyer v. Neff*, 95 U.S. 714, 733-34, 24 L.Ed. 565 (1877), the courts' ability to exercise personal jurisdiction has been constrained by the Due Process Clauses of the Fifth and Fourteenth Amendments. The requirement that a court have personal jurisdiction represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.

504 F.3d at 1138 (quotes and cites omitted).

28 U.S.C. § 754 and § 1692 work with F.R.Civ.P. 4(k)(1)(D) and contemplate that a receiver in effect "domesticate" her receivership in any federal judicial district in which she seeks to retrieve receivership estate property. "Domestication" occurs by filing a copy of the underlying complaint or indictment (from the case which generated the receivership), along with the order appointing her, in the district court for each judicial district in which property is located. The receiver must also post a bond "as required by the [domesticating] court," § 754, and ultimately a Rule 4(k)(1)(D) summons issues for service upon those from whom the receiver seeks to retrieve such property.[13]

---

[13] Section 1692 provides:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

28 U.S.C. § 1692. But to invoke § 1692, a receiver must first comply with § 754. *S.E.C. v. Bilzerian*, 378 F.3d 1100, 1103 (D.C.Cir. 2004). In relevant part § 754 provides:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> \* \* \* \*
>
> Such receiver shall, within ten days after the entry of [her] order of

Here the Receiver says that in the Southern District of Florida federal court (presumably Trespalacios's district) she filed copies of the Indictment in this case and this Court's Order appointing her. Doc. # 1070 at 2 ¶ 1. And, she has attached copies of a 4/17/06-filed, "Notice of Filing Indictment and Notice of Appointing Receiver and Monitor" with that court. *Id.*, exh. A; *see also* doc. # 599 (this Court's 4/3/06 Order appointing her receiver).

Ten days following the Receiver's Monday, 4/3/06 appointment in this Court is Thursday, 4/13/06. She filed her § 754 paperwork in the Florida federal court on 4/14/06, she says, *see* doc. # 1070 exh. A at 1 (that court's filing stamp is not legible, but her hand-date certification is 4/14/06), though it was not entered until 4/17/06. *Id.* F.R.Civ.P. 6(a) (exclude intervening weekends and holidays from the computation) renders it timely in any event.

Yet, the Receiver makes no mention of, nor furnishes a copy of, any bond, let alone proof of Rule 4(k)(1)(D) service upon Trespalacios. "Section 754 divests a receiver of jurisdiction over receivership property located in different districts if the receiver fails to post bond or comply with other obligations imposed by the statute." *Warfield*, 2007 WL 549467 at * 11.

And, "[b]ecause service of process under § 1692 is only authorized if the receiver has met the requirements of § 754, a court may not exercise personal jurisdiction over persons who are served by a receiver that has failed to comply with § 754." *Id.* "By not complying with § 754, a receiver fails to establish control over receivership property and cannot effect valid service of process under § 1692, which precludes using Rule 4(k)(1)(D) as a basis for personal jurisdiction." *Id.*

Evidently to get this Court to overlook these omissions (*i.e.*, no bond and no proof of Rule 4(k)(1)(D) service upon Trespalacios), the Receiver first reminds that, "[l]ike any claimant to receivership property, the determination of Trespalacios' entitlement to, and the amount (if any) of, his Claim must be determined by this Court." Doc. # 1070 at 9. She then distinguishes *Ross* because the receiver there argued that nonparties violated federal law (and thus engaged in wrongdoing), while determining Trespalacios's defense-costs entitlement here requires no adjudication of wrongdoing. *Id.* Plus, she adds, Trespalacios has received adequate due process (she served him with her motion to determine his entitlement and he has briefed the issue). She also reminds this Court of its "wide discretionary powers" in a receivership situation. *Id.* at 10.

Trespalacios again points out, *inter alia*, that the Receiver is urging personal jurisdiction over him without first satisfying §§ 754 and 1692's filing requirements. Doc. # 1096 at 1-2. In that regard, he has persistently objected to this Court's jurisdiction. *Id.* at 2-4; doc. # 965 at 4-6; # 937 at 6. And he remains *not* before this Court since his acquittal (*i.e.*, he has not since been served with new process). Doc. # 1096 at 1-3.

This Court agrees that, absent full compliance with § 1692, § 754 and Rule

---

appointment, file copies of the complaint [here, the Indictment] and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest her of jurisdiction and control over all such property in that district.

28 U.S.C. § 754.

4(k)(1)(D), this Court has no "receivership jurisdiction" over Trespalacios. The Receiver has failed to fully comply with these requirements, and any F.R.Civ.P. 59(e) reconsideration motion from her should include § 754-bond and Rule 4-service documentation.

That leaves Trespalacios in possession of receivership property (Bio-Med's money, from Bio-Med's loan to him), with the Receiver trying to collect it by way of a *state court* action under *state law*, and not directly through a federal action under *federal* law. At the same time, the Receiver is asking a *federal* (this) court to in effect declare that Trespalacios is not entitled to indemnification (so therefore he must repay the loan), even though:

(a) Trespalacios is *not* before this Court via formal F.R.Civ.P. 4 service following Receiver-compliance with 28 U.S.C. §§ 754 and 1692's requirements;

(b) the Receiver is not asking this Court for a money judgment for the amount of the loan (thus, in turn, enabling her direct effort to collect -- via execution of such judgment -- the debt from him); yet,

(c) her quest for this Court's determination that Trespalacios is not entitled to indemnification obviously will inform and thus affect the *state* court's ruling on whether Trespalacios is entitled to offset the value of his indemnification claim against Bio-Med against the Receiver's claims against him in that court.

Boiled down, then, *here* the Receiver seeks a *declaratory* (but not monetary) judgment[14] that Trespalacios is not entitled to indemnification -- so that *there* (in state court) the Receiver can win a *monetary* judgment against him.

Cagily, then, the Receiver has slipped into, and thus seeks to exploit, legal ambiguity here. No one cites, for that matter, any precedent for this configuration, where one court -- without personal jurisdiction over the affected individual -- is asked to issue a ruling which informs the judgment of another court -- the one *with* jurisdiction over that same individual.

All of that, of course, is too clever by a half. The Receiver cannot deny that Trespalacios possesses money (the loan to him) that the Receiver contends belongs to the receivership estate. In pursuing him for it (claiming that he was never entitled to it in the first place and thus, he is not entitled to retain it or the benefit of it), she obviously is seeking to collect property (the loan proceeds) belonging to the receivership estate. That required her to secure "receivership jurisdiction" over him in order to obtain a due-process-compliant judicial ruling here. And that, in turn, required her to comply with §§ 754 and 1692. *Ross*, 504 F.3d at 1145-48; *Warfield*, 2007 WL 549467 at * 11.

---

[14] A declaratory judgment requires that

> (1) that plaintiff has a present bona fide need for declaration; (2) that plaintiff is in doubt as to his rights; (3) that all parties necessary to resolution of issues are presently before court; and (4) that plaintiff is not merely seeking legal advice, but is rather seeking a resolution of his rights regarding a present controversy.

26 C.J.S. DECLARATORY JUDGMENTS § 22 (Dec. 2007) (*citing In re Pro Greens, Inc.*, 305 B.R. 356 (Bankr. M.D. Fla. 2003)).

14

To say that §§ 754 and 1692 can be ignored merely because no *monetary* judgment is pursued in a *liability* adjudication (sought here, albeit labeled as an "entitlement" determination) defeats basic due process protection against any *adverse* judgments against those over whom a court otherwise has no personal jurisdiction. *Ross*, 504 F.3d at 1145-46. Federal-state-court comity considerations aside, *see generally* 36 C.J.S. FEDERAL COURTS § 61 (Dec. 2007) (discussing when federal courts should abstain so as not to interfere with state proceedings), a judgment declaring no indemnification, which in turn would inform, if not enable, an adverse money judgment against Trespalacios in state court, most certainly would be adverse to him.

Accordingly, the Court grants Trespalacios's (and thus Rivera's[15]) motions to strike (doc. ## 937, 939, 1081) and, as to them, denies the Receiver's motion to determine entitlement. Doc. # 925.

Sara Griffin, in contrast, has actively submitted to this Court's jurisdiction over her, *see Ross*, 504 F.3d at 1147; doc. # 1074, and has shown (in a filing now unrebutted by both the Receiver and the Government) that she is entitled to $255,357.12 in legal costs. Doc. # 1074 at 2. This is the amount that she claims to have actually received -- paid directly to her defense counsel -- under the $300,000 in promissory notes that she gave to Bio-Med. *Id.*

The Court thus grants the Receiver's "entitlement" motion (doc. # 925) as to Griffin and determines that she is entitled to indemnification and thus owes Bio-Med no debt.

## III. CONCLUSION

Accordingly, the Court *GRANTS* the 1/18/08 joint stay motion (doc. # 1106) and therefore contemporaneously enters the "Agreed Order [Etc.]" that has been filed as an attachment to it. Consequently, the Court *DENIES* without prejudice the following motions (some can be renewed, depending upon the main appeal upon which the joint stay motion is premised): # 993 (Norma Bradley's motion for a hearing); # 1041 (tax refund turnover motion); # 1062 (Maria Bradley's Motion to Deposit Tax Refund in this Court's Registry); and # 1075 (Martin J. Bradley's Motion to Stay Sale of Key West Property).

Next, the Receiver's extension-motion (doc. # 1094) is *GRANTED*, and the receivership is extended until further Order of this Court.

In addition, the Receiver's Motion to Determine Entitlement to Indemnification (doc. # 925) is, as to Jose A. Trespalacios and Edwin Rivera, Jr., *DENIED*, and the Court *GRANTS* the Trespalacios/Rivera motions to strike it. Doc. ## 937, 939, 1081.

In contrast, the Court *GRANTS* the Receiver's "entitlement" motion (doc. # 925) as to Sara E. Griffin. Consequently, any and all appropriate court officials are therefore authorized and directed to deem satisfied any related, Griffin security deeds of record, particularly the Griffin security deed located in Book 299 N, Page 590 in Chatham County, Georgia Superior Court on 12/27/05. *See* doc. # 1074 at 5 (Proposed Order at 1).

Some ministerial matters: The Monitor's (Madison Associates, Inc.'s) motion (doc. # 1067) to file the Monitor's reports directly with

---

[15] The parties have treated Rivera as one who has been riding Trespalacios's coattails here. The Court therefore shall treat him likewise and assume the same facts (*i.e.*, that the Receiver failed to post a bond and Rule-4 serve him) apply, in which case the same ruling here applies.

15

the Court is *GRANTED*. Its motion (doc. # 1051) to file "under seal Report No. 14 dated June 2, 2007 and to file a redacted Report No. 14" also is *GRANTED*. However, these matters shall, absent a renewal (showing good-cause) motion filed 90 days from now, be automatically unsealed by the Clerk. *See U.S. v. Bradley*, 2007 WL 1703232 (S.D.Ga. 6/11/07) (unpublished); *Snethen v. Board of Public Educ. for the City of Savannah and the County of Chatham*, 2007 WL 2345247 at *1 (S.D.Ga. 8/15/07) (unpublished).

Next, the Government's motions (doc. ## 1104 & 1105) to approve Receiver and Monitor compensation are *GRANTED*.

Having tied up ever last loose end in this case, the Court now considers itself divested of further jurisdiction to act, so there should be no further motions filed here. The Clerk shall promptly transmit a copy of this opinion to the Eleventh Circuit.

This 25 day of January, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA