UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES

v.  405CR059

MARTIN J. BRADLEY, III, et. al.

ORDER

I. BACKGROUND

In this complex criminal RICO prosecution stemming from a prescription-drug-based fraud scheme, the Court appointed a receiver and a monitor to facilitate the forfeiture of tens of millions of dollars worth of convicted defendants' assets (including those of Bio-Med Plus, Inc.) to the United States. *U.S. v. Bradley*, 2008 WL 228064 (S.D.Ga. 1/25/08) (unpublished) (recounting case's history before extending the receivership until defendants' direct appeals are exhausted); doc. # 1107.

The receivership began in 2006, doc. ## 599, 790, and has cost nearly $2.8 million thus far. Doc. # 1173-2 at 11 (9/3/08 Monitor's Report No. 23 at 9); *see also id.* at 10 (Monitor's $694,400 costs as of 7/31/08). In fact, in 2007 the Court expressly noted the receivership's significant cost and hefty lawyer/accountant fees. *U.S. v. Bradley*, 2007 WL 4224963 at * 1 (S.D.Ga. 11/28/07) (unpublished). The Court later stayed forfeiture-collection of some disputed assets pending appeal. *Bradley*, 2008 WL 228064 at * 8 ("the Movants have worked out a 'standstill' Consent Order ... essentially locking down moneys and assets pending resolution of the pending appeals in this case"); *id.* at * 14 (implementing it). Much of the complication and cost stems from the liquidation of Bio-Med itself.

Since the receivership began, the Government has consistently certified that it has reviewed the Receiver's/Monitor's fee applications before moving the Court to approve same. *See, e.g.*, doc. # 1145. In the face of the Government's last compensation-approval motion, doc. # 1164, the Court expressed its concern about the expenses incurred thus far. It therefore directed the Receiver and Monitor to jointly file: (1) a description of the alleged assets that the Receiver is attempting to liquidate and her opinion of the probable success of these efforts; and (2) a summary of the proposed work necessary to maintain the receivership through the end of this year, including an identification of what work is "cost-benefit" necessary, plus a reasonable estimate of the cost for accomplishing same. Doc. # 1172.

II. ANALYSIS

A. Motion To Seal

The Receiver and Monitor have complied but, because their filing contains litigation strategy (*e.g.*, collection-action considerations) and similarly sensitive information, they move for leave to file it under seal. Doc. # 1181. They have not show good cause within the meaning of *U.S. v. Bradley*, 2007 WL 1464058 at * 10 (S.D.Ga. 5/17/07) (unpublished), *unsealing objections overruled*, *U.S. v. Bradley*, 2007 WL 1703232 (S.D.Ga. 6/11/07) (unpublished); *Snethen v. Board of Public Educ. for the City of Savannah and the County of Chatham*, 2007 WL 2345247 at * 1 (S.D.Ga. 8/15/07) (unpublished), so motion # 1181 is denied. Claiming interested party status, Norma Bradley requests service on this filing. Doc. # 1182. This request is moot because the Court is filing the materials unsealed and Norma may thus access it.

## B. Conflict of Interest

The Court also noted the Monitor's constant illumination of a claimed Receiver conflict of interest. Doc. # 1172; *see also* doc. # 1173-2 at 3. It thus directed the Government to respond. Doc. # 1172. It did. Doc. # 1180. It believes that no conflict exists. *Id.* The Monitor need not further report on this particular conflict.

## C. PDMA Inventory

Despite the fact that this case has been on appeal since 2006, various motions continue to trickle in. The Receiver, joined by the Government, renews her previous motion for leave to destroy the Prescription Drug Marketing Act (PDMA)[1] regulated pharmaceuticals discussed, *inter alia*, in *U.S. v. Bradley*, 2007 WL 3046516 at * (S.D.Ga. 10/17/07) (unpublished). Doc. ## 1177, 1178.

Maria Carmen Bradley and Martin J. Bradley III oppose destruction, accusing the Receiver of fanciful doublespeak and misleading semantics. Doc. # 1183. They step-by-step recount what they consider to be a blatantly wasteful avoidance of solid sale possibilities, including a $52,000 possibility noted by independent counsel,[2] then complain of the Receiver's mendacious misuse of terms:

> By this point, the Receiver appears to be following "Lewis Carroll's class[ic] advice on the construction of language: "'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I

---

[1] Under the Prescription Drug Marketing Act (PDMA),

> [e]ach person who is engaged in the wholesale distribution of a drug subject to subsection (b) of this section and who is not the manufacturer or an authorized distributor of record of such drug shall, before each wholesale distribution of such drug ... provide to the person who receives the drug a statement ... identifying each prior sale, purchase, or trade of such drug (including the date of the transaction and the names and addresses of all parties to the transaction).

21 U.S.C. § 353(e)(1)(A). "The PDMA's purpose is to protect the American consumer from tainted pharmaceuticals. The pedigree requirement was created to show where wholesale distributors were obtaining their drugs." *RxUSA Wholesale, Inc. v. Dep't of Health & Human Servs.*, 467 F.Supp.2d 285, 290 (E.D.N.Y. 2006), *aff'd*, *Department of Health and Human Services v. RxUSA Wholesale, Inc.*, 2008 WL 2699935 (2nd Cir. 7/10/08) (unpublished). The *RxUSA* district court addressed a constitutional issue and enjoined an implementing regulation, 467 F.Supp.2d at 296 but essentially said that for public safety reasons everyone, whether an authorized or an unauthorized distributor (like Bio-Med), must prove a drug's pedigree at least as far back to the authorized distributor through which the drug passed. Doc. # 903 at 7.

[2] They write:

> Even though [outside counsel, as hired by the Receiver,] King & Spalding[,] determined that "$52,070 worth of the . . . [subject inventory could] 'possibly' be sold" (Doc. # 1177 at 8), the Government, confused fundamentally about the very subject matter of the Receiver's motion, declared that "[t]he Government continues to believe the pharmaceuticals cannot and should not be marketed for sale." (Doc. # 1178 at 2).

Doc. # 1183 at 6. The Monitor essentially corroborates the $52,000 assertion. Doc. # 1173-2 at screen-pages 13-14.

2

choose it to mean—neither more nor less.'" *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 173 n.18 (1978) (quoting Lewis Carroll, *Through the Looking Glass, in The Complete Works of Lewis Carroll* 196 (1939)). In doing so, and after spending more than $20,000 not to assess the salability of disputed pharmaceuticals worth potentially $650,000 (Doc. # 1177-2 at 1–3), the Receiver proposes nothing less than a new litigation spree.

Doc. # 1183 at 6.

In short, the Bradleys accuse the Receiver of rank incompetence in her attempts to dispose of these assets. *Id.* at 6-7. And they highlight the relatively low storage cost ($750/month) pending appeal in insisting that the Receiver seeks "to convert more than $650,000 worth of salable pharmaceutical drugs into contraband (Doc. # 891 at 14), then destroy (Doc. # 875 at 3–4) the subject inventory based on inoperative, hence nonexistent regulations." Doc. # 1183 at 2.

Those are powerful assertions to say the least. Within 15 days of the date this Order is served, the Government and the Receiver shall file response briefs. Meanwhile, the Bradleys are invited to brief the Court on how *they* might find a buyer and thus foment a sale that complies with all applicable law. If the Receiver in fact is wasting this asset, then the Bradleys ought to be able to cite to a legitimate disposition method and sale possibility.[3] And they ought to be able to do

---

[3] The Bradleys insist that the storage costs are relatively minimal, and that these drugs constitute an asset that, should the main appeal in this case be successful, could conceivably come back to them. The Court will entertain a Bradley motion to stay the

so within 15 days from the date this Order is served. Otherwise, the Court will be inclined to grant the Receiver's motion.

### D. Forfeiture Motion

Non-party Novis Pharmaceuticals, LLC (Novis) moves the Court for leave to abandon receivership property stored without Novis's permission within its leased premises. Doc. # 1170. In essence, it wound up (by way of its property purchase from the Receiver) voluntarily storing part of the above-mentioned "PDMA inventory." It no longer wants to give the Receiver that free ride, has invoiced her $4,500 for storage costs (the Receiver disputes the validity of that invoice, *see* doc. # 1179 at 3), and demands ongoing storage fees. *See also* doc. # 1173-2 at screen pages 13-14 (Monitor's Report).

The Receiver does not oppose the central thrust of Novis's motion, given that destruction of the PDMA drugs will moot the issue. Doc. # 1179 at 4. The Court ***DEFERS*** ruling on Novis's motion (# 1170) until it receives the additional "PDMA" briefing discussed *supra*. Novis may renew its "abandonment" motion following this Court's follow-up ruling.

### E. Real Property Sale

The Court grants the Receiver's unopposed motion for approval of the sale of the "Interland Associates, Inc." property. Doc. # 1174. The Court will reach the just-filed motion for approval of sale of other Interland Associates, Inc. property, doc. # 1185, after the time to respond to it expires (it obviously would expedite these motions if the

---

destruction of the drugs conditioned upon the Bradleys' payment of all storage costs from 10/1/08-onwards.

movant would indicate that he or she has contacted all adversaries and ascertained whether there is any opposition).

## III. **CONCLUSION**

The Court ***GRANTS*** the Receiver's unopposed motion, doc. # 1174, for court approval of the sale of the "Interland Associates, Inc." property. The parties are directed to comply with the "PDMA" briefing schedule set forth in Part II(C) *supra*. Next, the Court ***DEFERS*** on Novis Pharmaceuticals, LLC's motion, doc. # 1170, until it receives the additional "PDMA" briefing. Finally, the Court ***DENIES*** sealing motion # 1181 (hence, it ***DENIES*** motion # 1182 as moot) and will not accept any further sealing motions in this case.

This  6  day of October, 2008.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA