UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION


UNITED STATES OF AMERICA

v.               405CR059

MARTIN J. BRADLEY, III, et. al.


## ORDER

### I. BACKGROUND

In this complex criminal RICO prosecution stemming from a prescription drug-based fraud scheme, the Court appointed a receiver and monitor to facilitate the execution of this Court's order of forfeiture of tens of millions of dollars worth of convicted defendants' assets to the United States. *U.S. v. Bradley*, 2008 WL 228064 (S.D.Ga. 1/25/08) (unpublished) (recounting case's history before extending the receivership until defendants' direct appeals are exhausted); doc. # 1107. According to the Monitor's February 2, 2009 report, funds available from the Receivership to pay forfeiture, fines and restitution ordered by the Court totaled $54,106,056.76 as of December 31, 2008. Doc. # 1206 at 4.

In the Order appointing the Receiver and Monitor, the Court ordered the Monitor "to review and approve all actions of the Receiver ... should the action result or conceivably result in an expenditure or obligation of $10,000 or more." Doc. # 599 at 2. In the exercise of its authority, the Monitor refused to approve payments by the Receiver to Rachlin, Cohen & Holtz, LLP ("Rachlin"), of which the Receiver is a partner, for tax services relating to years 2006 and 2007, pointing to the fact that the tax bills greatly exceeded the engagement agreement approved by the Monitor, and also that Rachlin failed to timely file 2006 and 2007 returns, resulting in late fees and penalties. Doc. # 1204 at 14, 15. In response to the Monitor's refusal to approve invoices, the Receiver filed an "Emergency Motion for an Order to Pay Rachlin LLP for Tax Services." Doc. # 1205. According to the Receiver, Rachlin should be paid $127,396.53 (presumably in addition to the $63,956.99 already paid) for tax services relating to tax years 2006 and 2007. *Id.* at 4.

The Court deferred ruling on the Receiver's emergency motion until it received additional briefing from the Receiver and Monitor. Doc. # 1211. Specifically, the Court ordered that (1) the Monitor file a response to the Receiver's emergency motion detailing the sequence of events leading to his refusal to approve payments to Rachlin and the reasons for doing so; and (2) the Receiver show good cause, if any could be shown, as to the reasons the tax returns were not timely filed and why the invoices for tax services exceeded the agreed upon contract price. *Id.* The Receiver and Monitor were reminded to comply with L.Cr.R. 12.1, which in part provides, "Every factual assertion in a ... brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit ... or other evidence filed with the motion. Where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted."

In response to the Court's order, the Monitor filed a detailed explanation outlining for the Court the sequence of events that led to its refusal to approve payments to Rachlin for the alleged tax services. Doc. # 1215. The

Monitor's response was supported by affidavits and other documentation. In an apparent concession that no cause could be shown for the pursuit of her emergency motion, the Receiver's filing was both untimely and unresponsive.

## II. ANALYSIS

The Monitor's and Receiver's responses to the emergency motion reveal the following:

### A. The Rachlin Engagement

In May 2007 the Receiver requested approval from the Monitor to engage Rachlin in preparing 2006 and 2007 federal and state tax returns for Bio-Med Plus and affiliated entities. Doc. # 1213, ¶ 6; doc. # 1214, ¶ 1. In a May 7, 2007 proposed engagement letter, Rachlin projected that its fees related to these tax preparations would be $84,000, and proposed a cap of $100,000. Doc. # 1213, exh. 4. On May 25, 2007, the Monitor questioned the necessity of certain aspects of Rachlin's proposed tax services and approved the engagement of Rachlin at a reduced amount of $76,500. Doc. # 1214, exh. 2.

In July, August, and September 2007, the Receiver submitted to the Monitor invoices relating to 2006 and 2007 tax services provided by Rachlin from February 7, 2007 through August 20, 2007. Doc. # 1213, exhs. 7, 8 & 10. In response, the Monitor approved the payments to Rachlin, which totaled $63,956.99. As a result, only $12,543.01 of the approved $76,500 budget remained. Doc. # 1213, exhs. 7 & 11.

Despite several inquiries from the Monitor, the Receiver did not present another Rachlin tax service invoice for approval until six months later. Doc. # 1213 at ¶ 11. On April 2, 2008, the Receiver provided the Monitor with a Rachlin invoice totaling $98,992.30 for tax services from August 2007 through March 2008. Accompanying the invoice was a memorandum from a Rachlin tax partner which purported to "explain the reasons for a budget overrun." Doc. # 1213, exh. 12. In what appears to evince a failure to exercise ordinary diligence, the Receiver attached a hand-written note on the Rachlin memorandum, which stated, "Approved for payment, including overrun." *Id.*

From April through mid-September 2008, the Monitor sought answers to simple questions: why was Rachlin seeking payment for previously paid invoices; why was approval not sought before exceeding the approved engagement; and what caused Rachlin to exceed the agreed-upon engagement? Doc. # 1213 at ¶¶ 13, 15, 17 & 19, and exhs. 13, 15, 17 & 19. Through e-mails, memoranda, revised, re-revised and thrice-revised invoices, the Receiver and Rachlin offered a stream of unresponsive and obfuscatory answers to the Monitor's inquiries reminiscent of the "Who's on First?" Abbott and Costello comedy routine. First, the Receiver initially claimed "we have been paid nothing"[1] in regards to Rachlin tax services provided from February through August 2007, but later conceded that the invoices had been paid. Doc. # 1213, exhs. 13 & 18. Second, the Receiver submitted several invoices and memoranda presenting inconsistent amounts due for the same alleged services, claiming first that Rachlin was still owed $98,992.30; then $105,766.90; then claiming $98,995.80; then $171,379.69. Doc. # 1213, exhs. 12, 14, 16 & 18. Finally, the

---

[1] The Receiver's "we" is telling – it reveals that the Receiver and Rachlin share interests. This conflict of interest is greatly troubling, and may perhaps explain the apparent failures of diligence by the Receiver.

2

Receiver had hastily sought Monitor approval of Rachlin invoices although they were well in excess of the agreed upon cap, only to admit months later that "Rachlin's Tax Department had not notified [her] of the significant overage in services as required." Doc. # 1213, exhs. 12, 14 & 18.

### B. Payments for Tax Year 2007

On September 14, 2008, the Receiver provided a "Summary of 2007 Income Tax Payments" totaling over $3.2 million. Doc. # 1213, exh. 22. These payments were apparently required to be made in conjunction with the filing of tax returns for Bio-Med and affiliated entities. *Id.* In response, the Monitor requested copies of the returns. Doc. # 1213 at ¶ 21. Upon review of the returns, the Monitor determined that the "tax payments" summarized by the Receiver actually included fees totaling $231,226 for interest and penalties arising from the Receivership's failure to pay taxes due on or before March 15, 2008. Doc. # 1213 at ¶ 22.

According to the Monitor, when the Receiver was confronted about the penalties she "acknowledged that mistakes may have been made by Rachlin personnel regarding interest and penalties associated with the filing of the returns, however it was her opinion [that the mistake] was an internal Rachlin issue...." Doc. # 1213 at ¶ 24. The Receiver then suggested that taxes may not have actually been due from the Receivership entities and stated her intention to request a formal ruling from the IRS on the issue.[2] *Id.*

---

[2] In its April 2, 2008 memorandum, Rachlin claimed (as a reason for the budget overrun) that a "considerable amount of time was required to be spent to determine ... what obligation the Receiver has to file returns for

The Monitor approved payment of taxes, penalties and interest, though only upon the condition that the Receiver immediately undertake efforts to recoup the losses caused by Rachlin's alleged malpractice. Doc. # 1214 at ¶ 7; *id.*, exh. 6. To date, the Receiver has refused.

### C. The Monitor's Refusal to Approve Invoices

The Monitor refused numerous requests by the Receiver for approval of additional Rachlin invoices for 2006 and 2007 tax year invoices. The Monitor refused for two reasons: (1) Rachlin's invoices were in excess of the approved $76,500 engagement; and (2) Rachlin's actions apparently caused the Receivership to be burdened with an unnecessary $231,226 expense. The Monitor's refusal to approve Rachlin tax service invoices appears to have been reasonable, necessary and consistent with this Court's directive that it "oversee the activities and conduct of the Receiver ... [and] ensure that the government's interest in the [Receivership] not [be] diminished or dissipated...." Doc. # 599 at 2.

### D. The Receiver's Conflict of Interest

The potential for a conflict arose when the Receiver retained its own accounting firm to provide tax services for the benefit of the Receivership. Based upon the Receiver's recent actions, it appears that an actual conflict has developed.

---

entities under her control...." Doc. # 1213, exh. 12. Recently, however, the Receiver has expressed doubt about Rachlin's conclusion that taxes needed to be filed. Doc. # 1213 at ¶ 24. Such a theory necessarily calls into question the overall reasonableness of Rachlin's tax advice and services. It is therefore troubling that the Receiver nonetheless contends in her emergency motion that Rachlin's services were reasonable. Doc. # 1205.

3

On April 2, 2008, the date Rachlin presented tax service invoices far in excess of the approved budget, the Receiver could have acted in the best interest of the Receivership by recognizing that a conflict existed and recusing herself from further involvement. Instead, the Receiver -- in the interest of Rachlin and not of her fiduciary charges -- gave blanket approval to each misstated and miscalculated invoice. Then, when questioned by the Monitor about whether certain invoices had been paid, she proclaimed, *"[W]e have been paid nothing."* Doc. # 1213, exhs. 13 & 18 (emphasis added).

The Court notes that from April through August 2008, while the Receiver was expending Receivership time and resources on repeated attempts to obtain payment for Rachlin's services, Rachlin inexplicably provided virtually no tax services to the Receivership. Rachlin neglected to provide estimated tax payments to the Receivership in March 2008, provided no services in April, May, June and July, and provided less than $500 worth of services in August. Doc. # 1214, exh. 10. This inactivity suggests that Rachlin negligently allowed late penalties and interest to accrue, while it waited for the Receiver's collection of its fees in excess of the cap.[3]

In September 2008, the Monitor advised the Receiver's counsel that the Receiver's efforts to obtain payments on behalf of Rachlin presented a conflict of interest. Doc. 1214 at ¶ 11. The Monitor recommended that an outside arbiter be engaged to negotiate a resolution with Rachlin. Doc. # 1214 at ¶ 11; *id.*, exh. 9. The Receiver declined the Monitor's recommendation.

Despite the fact that the invoices were more than $100,000 over budget, and more than $200,000 in interest and penalty fees had been incurred, the Receiver unabashedly continued to press the Monitor for approval of payment to Rachlin. On February 4, 2009, the Receiver filed her emergency motion for an order to pay Rachlin. In the motion, the Receiver attempts to offer her own expert opinion on behalf of Rachlin: that the services provided were reasonable. Doc. # 1205 at 4-5.

Given an opportunity by this Court to support her contentions of reasonableness with actual evidence, the Receiver balked. Instead, the Receiver explicitly confirmed her conflict of interest by ignoring this Court's directive and representing that she "has been authorized by Rachlin LLP to propose" a course of action that had been proposed by the Monitor five months earlier. Doc. # 1217 at 2 (proposing that Rachlin and the Monitor "agree on a comparable South Florida accounting firm to serve as an independent reviewer of Rachlin LLP's work and render an opinion to the Court regarding the reasonableness of the fees"). The opportunity for such review, however, has come and gone. Through her emergency motion, the Receiver has *de facto* selected this Court as the independent arbiter.

E. **Show Cause**

Based upon the Receiver's emergency motion, the Monitor's response, and the Receiver's reply, the Court makes several findings. First, the Receiver's emergency motion is without merit. Second, since April 2, 2008, the Receiver has operated under a conflict of interest and, with regard to the Rachlin tax

---

[3] Astoundingly, the Receiver claims in her emergency motion that the Rachlin fees were reasonable, in part, because of the "results obtained." Doc. # 1205 at 4.

4

service invoices, has not acted in the best interest of the Receivership. Third, the Receiver's conflict has burdened the receivership not only by enabling an excessive budget overrun and the incurrence of unnecessary expenses, but also by causing additional Receiver's fees, Monitor's fees, and attorneys' fees (which the Receivership has been forced to fund) due to the Receiver's blind pursuit of an interest in conflict with the interests of the Receivership.

As it appears that the Receiver has a conflict of interest, she is directed to show cause why she should not be removed as Receiver, and why the Court should not seek to recover any wasted assets. During the show cause hearing, the Court also will expect to hear from the Monitor and the Government.

## III. CONCLUSION

The Receiver's emergency motion for an order to pay Rachlin LLP is *DENIED*. The show cause hearing is scheduled for 10:00 a.m. on Tuesday, April 21, 2009. Any written responses or documents shall be filed no later than 1:00 p.m. on Thursday, April 16, 2009.

This _7_ day of April, 2009.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

5