UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA

v.   405CR059

MARTIN J. BRADLEY III, et al.,

**Defendants.**

## ORDER

### I. BACKGROUND

In September of 2005 a two hundred and eighty-six count superseding indictment was returned against the defendants in a complex criminal RICO prosecution stemming from numerous fraud schemes involving the purchase and sale of prescription medications. Doc. # 228. After a six-week trial in which the government called 89 witnesses to testify, the jury returned verdicts of guilty against defendants Martin J. Bradley Jr., Martin J. Bradley III, Bio-Med Plus, Inc. (Bio-Med), and Albert Tellechea. Before the Court are two motions for a new trial. Doc. ## 1219, 1221. In one motion, the defendants jointly move for a new trial based on what they claim was the prosecution's improper withholding of evidence that could have been used to impeach a prosecution witness. Doc. # 1221. Additionally, defendant Bradley Jr. moves for a new trial based on newly discovered evidence relevant to his competence to stand trial. Doc. # 1219.

### II. SUPPRESSION OF *BRADY* EVIDENCE

Defendants allege that they have a right to a new trial based on the government's failure to provide potential impeachment evidence against Lawrence Pinkoff – a prosecution witness – as required by *Brady v. Maryland,* 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution..."); *see also Giglio v. U.S.*, 405 U.S. 150, 154 (1972) (impeachment evidence falls within *Brady* rule). To succeed on a *Brady* claim, the defendants must show that "(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *U.S. v. Vallejo,* 297 F.3d 1154, 1164 (11th Cir. 2002).

A defendant alleging a *Brady* violation "must show that the favorable evidence was possessed by a district's prosecution team," which includes both investigative and prosecutorial personnel, and anyone over whom the prosecutor has authority. *Moon v. Head,* 285 F.3d 1301, 1309 (11th Cir. 2002). Furthermore, "[a] prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness." *Id.* (citation omitted).

Defendants allege that at the time he was assisting the prosecution in this case, Pinkoff was also the target of a criminal investigation (the Pinkoff Investigation)[1] concerning the distribution of controlled substances. That investigation resulted in an indictment and

---

[1] For purposes of simplicity, the Court will refer to this as the "Pinkoff Investigation." However, Pinkoff does not appear to have been the original target of the investigation and was one of many individuals implicated in a broad conspiracy. *See* doc. # 1221-11.

subsequent prosecution of twenty-one defendants, including Pinkoff. The indictment was returned on 2/6/07 – ten months after the jury in this case reached its verdict on 3/31/06. Doc. # 1221-3. Defendants assert that evidence of this criminal investigation against Pinkoff should have been disclosed as impeachment evidence against him.

The *Bradley* prosecution has denied under oath that it had any knowledge of Pinkoff's illegal activities charged in the indictment. Doc. # 1225 at 15, # 1221-26 at 23. Nevertheless, the defendants claim that the prosecution had imputed knowledge, because the agencies involved in the Pinkoff investigation were also members of the *Bradley* prosecution team.

The Pinkoff investigation was conducted primarily by the Drug Enforcement Administration (DEA) and the United States Attorney's Office in the Southern District of Florida. *See* doc. # 1221-2 at 6. The defendants provide no support for their assertion that either of those entities was connected to the *Bradley* case. Rather, they assert that other agencies, namely the Food and Drug Administration (FDA) and the Internal Revenue Service (IRS) were involved in *both* the Pinkoff and the *Bradley* investigations. The government admits that agents of the FDA and IRS were part of the *Bradley* prosecution team, doc. # 1225 at 12, but it is far from clear that these agencies were involved in the Pinkoff investigation.

The Court need not unravel the factual complexities of the involvement of various agencies and individuals in the *Bradley* case and the Pinkoff investigation. From a thorough review of the parties' briefs and supporting evidence, the Court is generally convinced that the government has successfully refuted defendants' claims that there was overlap between the Pinkoff investigative team and the *Bradley* prosecution team.[2] Moreover, even if the Court were to find that the *Bradley* prosecution team had imputed or actual knowledge of a criminal investigation against Pinkoff, the Court does not find a *Brady* violation because there has been no showing of a reasonable probability that this impeachment evidence would have led to a different result at trial. "A 'reasonable probability' of a different result is ... shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *U.S. v. Bagley*, 473 U.S. 667, 678 (1985)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

During the *Bradley* trial, the government called eighty-nine witnesses who offered evidence against the defendants. Pinkoff was only one of those. The defendants argue that

---

[2] For example, with respect to the FDA, the defendants claim that a prosecutor involved in the Pinkoff investigation "openly conceded that the FDA was involved in the [Pinkoff] investigation," doc. # 1221-2 at 25, by way of the FDA having conducted an interview with one of Pinkoff's co-conspirators. The government correctly notes that this misrepresents the prosecutor's statement. The prosecutor admitted that the FDA had interviewed one of Pinkoff's co-conspirators years earlier, but she expressly stated that the subject matter of those discussions was different from the subject matter of the Pinkoff indictment. Doc. # 1221-25 at 3 ¶ 3.

As an additional example, the defendants assert that the IRS was part of both the *Bradley* and Pinkoff prosecution teams, doc. # 1221-2 at 13, 32, but the only evidence they offer in support of this conclusion is the fact that Pinkoff admitted during his trial that the IRS had interviewed him as part of the *Bradley* investigation in 2001 – long before the Pinkoff investigation began in 2003. Doc. # 1221-2 at 25.

2

"[t]he underlying evidence that Pinkoff had engaged in post-cooperation criminal conduct, and double-dealing with the government, and that possible drug trafficking charges were lurking ... would have revealed Pinkoff's motive to please the prosecutors." Doc. # 1221-2 at 32. Yet, at trial, the defense counsel launched a fierce attack on Pinkoff's credibility during cross examination. Pinkoff admitted that he had committed perjury on multiple occasions (including during the time he had been cooperating with the government), doc. # 669 at 403-406, 412, that he had committed various crimes for which he was on probation, *id.* at 424, that he had entered a plea agreement for racketeering and Medicaid fraud charges, *id.* at 415, and that his assistance to the prosecution was being provided pursuant to a plea agreement, *id.* at 422. Thus, defense counsel's cross-examination made it abundantly clear to any juror that Pinkoff was not a trustworthy character, was a criminal, and that he was testifying against the defendants in order to save his own skin. Any additional evidence that could have been used to impeach Pinkoff's testimony would have been cumulative and does not support the finding of a *Brady* violation. *See Baxter v. Thomas*, 45 F.3d 1501, 1507-08 (11th Cir. 1995) (cumulative impeachment evidence did not rise to level of *Brady* violation); *U.S. v. Valera*, 845 F.2d 923, 928 (11th Cir. 1988) (same).

Thus, even if the government possessed and should have disclosed information regarding the Pinkoff investigation to the defense, such failure was immaterial and cannot be said to undermine confidence in the outcome of the trial. As no evidentiary hearing can cure this defect in the defendants' *Brady* claim, the Court denies the request for such a hearing.

## III. NEWLY DISCOVERED COMPETENCY EVIDENCE

Defendant Martin Bradley, Jr. (hereinafter "Bradley") also moves for a new trial based on newly discovered evidence as to his competence to stand trial. Doc. # 1219. Prior to his criminal trial Bradley moved for a competency hearing under 18 U.S.C. § 4241, stating that dementia rendered him unable to assist properly in his defense. Doc. # 288. He submitted reports from his own experts that supported his claim of incompetence. The magistrate judge then ordered a mental evaluation from the Federal Medical Center (FMC) in Butner, North Carolina which resulted in a report (the Butner Report) concluding that Bradley was competent to stand trial. Doc. # 290. After considering the Butner Report and the findings of Bradley's experts, the magistrate judge issued a report and recommendation (R&R) finding that Bradley was competent to stand trial. Doc. # 349. The Court issued an order adopting the R&R over Bradley's objections. Doc. ## 386, 393.

Bradley now contends that there is newly discovered evidence that should have been considered by the Court. He has submitted a copy of the notes that were prepared by neurologist Tadeusz Federico Poplawski, M.D., in connection with the Butner Report. Doc. # 1219. Bradley suggests that Dr. Poplawski's notes are generally consistent with Bradley's expert physicians and challenges the Court's finding that he was competent to stand trial. *Id.* He moves under F.R.Crim.P. Rule 33 for "a new trial and/or such other relief as the Court deems appropriate." *Id.*

The Court assumes, *arguendo*, that Rule 33 provides a basis for the Court to reconsider its determination that Bradley was competent

3

to stand trial in light of Poplawski's report.[3] Rule 33 motions on the grounds of newly discovered must be viewed with "great caution." *U.S. v. Reed*, 887 F.2d 1398, 1404 (11th Cir. 1989) (quotes and cite omitted). A party seeking "new trial" relief based on newly discovered evidence must demonstrate that the evidence is of such a nature that a new trial would probably produce a new result. *Id.*

Poplawski's notes state that Bradley showed signs that were 'very suggestive of pseudo dementia,' and that Poplawski "[could not] rule out some organic early stages of dementia." Doc. # 1219-2. The fact that Poplawski's notes support an assessment of "pseudo dementia" is nothing new. Prior to this Court's competency ruling, Bradley objected to the Butner Report's failure to explain the findings of the unidentified neurologist who had "apparently offered a diagnosis of pseudodementia [sic] which is glossed over in the [Butner Report]." Doc. # 386 at 11. Thus, while it was not known that Poplawski was the unidentified neurologist when this Court ruled on Bradley's competency, the substance of Poplawski's findings was known and considered.

Poplawski's notes also reference "[m]ajor discrepancies on testing of memory suggesting pseudo memory dysfunction." Doc. # 1219-2. However, the Court based its conclusion that Bradley was competent to stand trial, in part, on "evidence that defendant may have intentionally exaggerated his memory deficits on the evaluations at FMC." Doc. # 349 at 18. Indeed, this finding is supported by Poplawski's notes which state that he "[c]annot rule out the possibility of severe embellishment." Doc. # 1219-2 at 1.

Ultimately, Poplawski's notes were merely a piece of a larger evaluation that was conducted by a team of professionals and which culminated in a comprehensive report. For a variety of reasons, the Court found the Butner Report to be more credible than the conclusions reached by the defendants' experts. *See* doc. # 349 at 14-18. Poplawski's notes do not undermine the Butner Report's conclusion, nor do they have any effect on this Court's conclusion that the Bradley was competent to stand trial.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions for a new trial are *DENIED*. Doc. ## 1219, 1221.

This 20th day of April 2009.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] There is some question as to whether Rule 33 is the appropriate vehicle for the relief requested by Bradley. Rule 33 provides for a new trial "if the interest of justice so requires." F.R.Crim.P. 33. Courts have concluded that Rule 33 may afford a remedy when a defendant comes forth with newly discovered evidence regarding his competency at trial. *See U.S. v. Herrera*, 481 F.3d 1266 (10th Cir. 2007) (considering Rule 33 motion after defendant claimed that newly discovered medical evidence showed that he was not competent to stand trial); *U.S. v. McCarthy*, 54 F.3d 51 (2d Cir. 1995) (considering Rule 33 motion when defendant discovered an interim psychiatric report after trial). Yet, here, Bradley is not requesting a new trial; he instead asserts that he should not have been deemed competent to stand trial at all. Because he is not asking for a "re-do" of his trial, the Court has its doubts as to whether Rule 33 is applicable.

4